UNITED STATES, Appellee,

v.

Paul G. HUBERTY, Lieutenant Colonel,
U.S. Air Force, Appellant.

No. 99–0778.
Crim.App. No. 32574.

U.S. Court of Appeals for
the Armed Forces.

Argued March 2, 2000.

Decided Aug. 25, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Frank J. Spinner* (argued); *Colonel Jeanne M. Rueth, Lieutenant Colonel James R. Wise* and *Major Thomas R. Uiselt* (on brief).

For Appellee: *Major Bryan T. Wheeler* (argued); *Colonel Anthony P. Dattilo,* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Senior Judge COX delivered the opinion of the Court.

On August 12–22, 1996, Lieutenant Colonel Paul G. Huberty was convicted by officer members of consensual sodomy, fondling his genitals in a public area, indecent acts, and adultery, in violation of Articles 125, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 933, and 934. On February 11, 1997, the convening authority approved the sentence of dismissal, confinement for 6 months, and a reprimand, and the court below affirmed.

On December 1, 1999, we granted review of the following issues:

### I

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION BY DENYING APPELLANT'S REQUEST FOR AN *IN CAMERA* PRODUCTION OF DR. SNYDER'S CREDENTIALS RECORDS TO DETERMINE WHETHER THEY CONTAINED RELEVANT INFORMATION TO SUPPORT A PETITION FOR NEW TRIAL.

### II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR WHEN HE RULED DEFENSE EXPERT TESTIMONY INADMISSIBLE WHILE ADMITTING GOVERNMENT EXPERT TESTIMONY OVER DEFENSE OBJECTION.

## FACTS

### 1. Background

Appellant is a 39–year–old Lieutenant Colonel with over 18 years of active service. He is married and has three children. The offenses occurred while he was assigned to Geilenkirchen NATO Air Base in Germany. Appellant's conviction for dishonorably fondling his genitals arose out of an incident at a public swimming pool in the Netherlands involving two Dutch women. The sodomy, indecent acts, and adultery occurred with AH, a 17–year–old female who accompanied appellant and his family to Germany as his legal ward.

Appellant pleaded not guilty to all offenses and testified in his own defense. He denied exposing himself to the two Dutch women, blaming them for being in the men's area. He also denied having an improper sexual relationship with AH. At trial, the defense called Dr. Terence Campbell, a civilian psychologist, to testify as an expert witness. The Government also called an expert witness, Dr. Snyder, an Air Force psychologist, to rebut Dr. Campbell's testimony.

### 2. Issue I

While this case was pending before the court below, appellant sought to ascertain from the Office of the Surgeon General whether any adverse actions had been taken against Dr. Snyder. On September 11, 1998, the Office of the Surgeon General denied the request that had been filed under the Freedom of Information Act, noting that the information was protected by the confidentiality of medical records. 5 USC § 552(b)(3).

On January 7, 1999, appellant moved to have the Air Force Court of Criminal Appeals order the production of the information for an *in camera* review. The Government opposed the motion. On January 21, 1999, the Air Force Court of Criminal Appeals issued an order to have the Office of the Surgeon General provide the information about Dr. Snyder, noting appellant's right to appellate discovery. The next day, the Air Force Court rescinded its order and denied appellant's motion for an *in camera* review of

information regarding Dr. Snyder. The order stated:

This order does not preclude appellant from providing this Court specific information to support his "good faith basis" that the requested materials are relevant to his trial by general court-martial and likely contain information which may support a petition for new trial.

Appellant moved for an expedited reconsideration of the order denying the request for an *in camera* review of Dr. Snyder's records. Appellant claimed he had hearsay information that Dr. Snyder's credentials were suspended, removed, or limited. In denying the motion for an expedited reconsideration, the court below stated:

The sole basis for the request is appellant's belief, based on hearsay statements, that the individual's credentials were limited, suspended, or removed. However, the appellant offers no information that connects the alleged credentialing action against the medical care provider with the testimony that the medical provider provided at his trial.

We granted review of these issues on December 1, 1999, and the case was argued on March 2, 2000. After hearing oral argument, this Court issued the following order dated March 23, 2000:

That within 30 days of the date of this order, the United States of America, appellee, shall take such action as is necessary to locate and obtain those files in the possession of the United States that relate to medical credentials of Captain Susan Snyder. Upon obtaining such files, appellee shall forthwith provide them to this Court so that an *in camera* inspection may be made to determine whether information is contained therein that would reasonably support a petition by appellant for a new trial.

### 3. Issue II

At trial, the defense proffered the testimony of Dr. Terence Campbell, a civilian psychologist, concerning the allegations of the indecent exposure at the swimming pool and appellant's relationship with AH. Dr. Camp-

bell personally evaluated appellant, using the Minnesota Multiphasic Personality Inventory—2 test (MMPI–2) and other psychological tests. In addition, he interviewed appellant about his personal history and was present in the courtroom during the presentation of the Government's case.

The military judge allowed Dr. Campbell to testify at length about the dynamics of appellant's family and AH's family. He did not allow Dr. Campbell to present evidence on the MMPI–2 results or on Dr. Campbell's conclusion that appellant is not an exhibitionist.

Dr. Campbell was prepared to testify that: only an exhibitionist would have conducted himself in the manner that BV testified; that exhibitionists will consistently produce certain test results on the MMPI–2; that appellant did not produce those results; and, therefore, that appellant is not an exhibitionist.

In excluding this testimony, the military judge relied upon *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *United States v. Nimmer,* 43 MJ 252 (1995), and *United States v. Houser,* 36 MJ 392 (CMA 1993). The reasons for his rulings were:

1. The issue before the court was not whether or not the accused was an exhibitionist, but whether, on one particular occasion, he exposed himself in a public place. Dr. Campbell's testimony would not have assisted the factfinder.

2. The defense failed to establish that only an exhibitionist would stand naked in a public place, making eye contact with an unknown woman while masturbating.

3. The defense failed to establish the reliability of the MMPI–2 in determining whether an accused acted in conformity with the results thereof.

4. The probative value of any such testimony would be substantially outweighed by the danger of confusion and waste of time.

Dr. Snyder was a prosecution witness called to rebut Dr. Campbell's testimony concerning the family dynamics. She was the

staff psychologist who ran the mental health clinic at Geilenkirchen. She testified over defense objection that appellant's relationship with AH, which Dr. Campbell deemed to be manipulative behavior by AH, could also be consistent with appellant's having groomed AH for sex. The defense objected to the testimony as inadmissible profile evidence. The military judge allowed questions concerning behaviors exhibited by appellant but prohibited questions as to whether these behaviors were "typical of a sexual perpetrator."

## DISCUSSION

### Issue I

Appellant asserts that the Court of Criminal Appeals abused its discretion by denying appellant's request for an *in camera* production of Dr. Snyder's credentials records to determine whether they contained relevant information to support a petition for a new trial. Art. 73, UCMJ, 10 USC § 873. The basis for the request is appellant's belief, based on hearsay statements, that Dr. Snyder's credentials were limited, suspended, or removed.

Pursuant to our Order of March 23, 2000, we have inspected *in camera* the credentials file of Captain Snyder. Based on our inspection, we have found no information that would have been available to appellant at the time of trial to impeach or attack the credibility of Dr. Snyder or which would support a petition for a new trial.[1] Accordingly, we grant appellant no relief.

### Issue II

Appellant asserts that the military judge committed prejudicial error when he: (A) did not permit Dr. Campbell's testimony on the MMPI-2 results or on Dr. Campbell's conclusion that appellant is not an exhibitionist, and (B) when he permitted Dr. Snyder to testify that appellant's behavior was consistent with grooming.

■ The trial judge is the "gatekeeper," whose role is to screen scientific evidence or testimony to make sure it is relevant and reliable. *General Electric Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Abuse of discretion is the proper standard by which to review a decision to admit or exclude expert evidence. *Id.* at 141, 118 S.Ct. 512. An appellate court will not reverse unless the ruling is manifestly erroneous. *Id.* at 142, 118 S.Ct. 512.

■ As we noted in *United States v. St. Jean*, 45 MJ 435 (1996), under the Military Rules of Evidence, expert testimony is admissible if it is reliable, if it is relevant, and if its probative value outweighs its prejudicial effect. 45 MJ at 444. In *United States v. Houser*, we set out six factors to be considered by the military judge when making this determination: (1) the qualification of the expert, Mil.R.Evid. 702; (2) the subject matter of the expert testimony, Mil.R.Evid. 702; (3) the basis for the expert testimony, Mil. R.Evid. 703; (4) the legal relevance of the evidence, Mil.R.Evid. 401 and 402; (5) the reliability of the evidence, Mil.R.Evid. 401; and (6) whether the probative value of the evidence outweighs other considerations, Mil. R.Evid. 403. 36 MJ at 397; *see Daubert v. Merrell Dow Pharmaceuticals, supra*.

#### a. Dr. Campbell

■ The military judge did not allow Dr. Campbell to testify that: only an exhibitionist would have conducted himself in the man-

---

1. RCM 1210(f)(1), Manual for Courts–Martial, United States, (1995 ed.) provides that a new trial may be granted only on grounds of newly discovered evidence or fraud on the court-martial. RCM 1210(f)(2) provides that, "A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:

   (A) The evidence was discovered after the trial;

   (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and

   (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused."

RCM 1210(f)(3) provides that, "No fraud on the court-martial warrants a new trial unless it had a substantial contributing effect on a finding of guilty or the sentence adjudged."

ner that BV testified; that exhibitionists will consistently produce certain test results on the MMPI–2; that appellant did not produce those results; and, therefore, that appellant is not an exhibitionist.

Appellant was unable to establish that the challenged testimony has gained widespread acceptability in the scientific community. In fact, Dr. Campbell testified that he was only aware of one psychologist who attempted to offer a similar theory in another jurisdiction. Dr. Campbell also admitted that there are no published studies supporting the theory that psychological testing can exclude a person from a psychological diagnosis of exhibitionism. Because this theory was unpublished (and thereby not subjected to peer review), Dr. Campbell also acknowledged it had yet to be subjected to testing. We hold, therefore, that the military judge did not err in excluding this testimony because it was unreliable. *See United States v. Latorre,* 53 MJ 179 (2000).

Even if the military judge had admitted the testimony that Dr. Campbell was unable to characterize appellant as an exhibitionist, the remainder of the proposed testimony at issue was not legally relevant. *See Houser, supra.* As the military judge noted, "The issue before the court was not whether or not the accused was an exhibitionist, but whether, on one particular occasion, he exposed himself in a public place." At a minimum, Dr. Campbell's proferred extrapolation—that, because he could not characterize appellant as an exhibitionist, he could absolutely eliminate appellant as someone who would commit the charged conduct at the pool—would have constituted improper use of profile evidence. *See United States v. Banks,* 36 MJ 150, 160–63 (CMA 1992).

### b. Dr. Snyder

■ Appellant's claim that the Government's expert, Dr. Snyder, impermissibly testified that appellant fit a psychological profile also lacks merit.

The military judge permitted Dr. Snyder to testify that some of appellant's behavior with respect to AH, which Dr. Campbell deemed to be manipulative behavior by AH, could also be consistent with appellant's having groomed AH to have sex with him. The military judge prohibited questions as to whether these behaviors were "typical of a sexual perpetrator." The military judge also, on his own initiative, prohibited the Government from pursuing a line of questioning concerning higher incidents of sexual abuse in non-natural parent relationships.

The purpose of Dr. Snyder's testimony was to explain the behavior of AH with respect to appellant differently than explained by Dr. Campbell. Where Dr. Campbell deemed certain behavior to be indicative of manipulation by AH, Dr. Snyder offered an alternative explanation—that the behavior was consistent with appellant's having groomed AH to have sex with him.

Even if it can be argued that Dr. Snyder's testimony was "profile" evidence, that would not end our inquiry. In *Banks,* we recognized that in some circumstances, "profile evidence" may become logically relevant and thus admissible for some limited purposes. 36 MJ at 162. In the instant case, it is clear that the testimony was admitted to rebut the testimony of appellant's expert witness, Dr. Campbell, and to explain that the victim's behavior was consistent with a theory that appellant had "groomed her." The testimony was not admitted for the purpose of showing that appellant fit the "profile" of a sex abuser. Thus, we find no error.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.