UNITED STATES, Appellee

v.

Jonathan A. CAMPBELL, Airman First Class
U.S. Air Force, Appellant

No. 01-0467

Crim. App. No. 33647

_____

United States Court of Appeals for the Armed Forces

Argued January 23, 2002

Decided August 6, 2002

BAKER, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE and EFFRON, JJ., joined.  SULLIVAN,
S.J., filed an opinion concurring in the result.

Counsel

For Appellant:  Captain Patrick J. Dolan (argued);
  Lieutenant Colonel Beverly B. Knott (on brief).

For Appellee:  Captain Adam Oler (argued); Colonel Anthony
  P. Dattilo and Major Lance B. Sigmon (on brief); Major
  Bryan T. Wheeler.


Military Judge:  Howard P. Sweeney

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

United States v. Campbell, No. 01-0467/AF

Judge BAKER delivered the opinion of the Court.

Appellant was tried at Elmendorf Air Force Base, Alaska, by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of using marijuana on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 USC § 912a. The adjudged sentence provided for a bad-conduct discharge and no other punishment. The sentence was approved by the convening authority.

## Procedural Background

After the convening authority took action, appellant filed a congressional complaint with a Member of the United States Senate alleging prosecutorial misconduct in his case. Specifically, appellant alleged that trial counsel coerced perjured testimony from the witnesses against him by threatening that they were "going to jail for a long time if they don't testify against [him] and say what they want them to say." Before submission of appellant's case to the Court of Criminal Appeals, appellate defense counsel obtained signed but unsworn letters from three individuals whose courts-martial arose out of the same factual circumstances as appellant's. A letter from Richard Wisniewski stated:

2

> I told Elmendorf Legal Office, Capt Reese that I never witnessed John Campbell use any drugs. Capt Reese told me "that wasn't good enough." That I could remember more and if I didn't then I was not cooperating with him and my Pre-Trial Agreement would be taken from me. With my P.T.A. at steak [sic]. I had to state in John Campbells [sic] Art. 32 hearing that I physically witnessed Campbell smoke marijuana 4-6 times. . . . I was told many times by the Elmendorf Legal Office Staff what I <u>had</u> to <u>say</u>, in order to keep my Pre-Trial Agreement. I find this not only wrong, but I had to betray a friend in fear of going to prison for 10 or more years. Nothing can change the fact I had to lie.

A letter from Stephen Hicks stated:

> I know that the prosecution in these cases persuaded the soldiers involved to lie under oath. . . . I myself was instructed to lie in the cases of "U.S. vs. Campbell" and "U.S. vs. Leavitt." . . . [T]he prosecution told me that I could lose my pretrial agreement if I did not tell them what they wanted to hear regarding the case of "U.S. vs. Campbell". . . . I fully cooperated and told the truth, but I never received any recommendations toward a lesser sentence . . . .

Lastly, a letter from Josh Leavitt stated:

> On several occasions, I was asked to speak to the prosecution in U.S. <u>vs</u> Johnathan Campbell. In this discussion (interrceaction) [sic], I was badgered into a concrete line of testimony. I testified in his trial that they wanted me to "twist the truth." . . . I informed the prosecutors that a lot of the things in [my first statement] were inaccurate, but once again I was instructed to stick with it so it wouldn't seem like I was lying or making any of it up.

Of the three individuals submitting letters, only Leavitt

testified at appellant's trial.

3

Appellate defense counsel subsequently requested from the Air Force Legal Services Agency a copy of the "Committee on Ethics and Standards Investigation Report of Prosecutorial Misconduct, U.S. v. Campbell." Alternatively, "at a minimum," he asked for copies of statements made by witnesses and subjects of this inquiry. The Government denied this request without confirmation as to whether such a report or statements existed.[1] On April 10, 2000, appellate defense counsel filed a motion in the Court of Criminal Appeals requesting that the court compel production of the report. That court denied the request on April 27, 2000, finding that

> (1) The appellant failed to establish jurisdiction of this Court over the appellant's case.
>
> (2) The appellant's motion is premature. Before this court can judge the merits of the appellant's motion, there must be some assignment of error or allegation against which the relevance of the petition may be judged.

---

[1] At oral argument, government counsel stated that to this day, he is still not aware whether an inquiry into appellant's allegations was conducted. In contrast, appellant's brief states, "Appellant in the case at bar actually knows that relevant evidence concerning his appeal exists and is in the possession of the government." Final Brief in Support of Petition Granted at 8. Appellate defense counsel tempered this statement at oral argument, conceding that absent some definitive statement from the Government, counsel could not, in fact, confirm the existence of a report.

4

United States v. Campbell, No. 01-0467/AF

On June 30, 2000, appellate defense counsel filed assignments of error with the Court of Criminal Appeals and subsequently, on July 19, 2000, filed in this Court a petition for extraordinary relief in the nature of a writ of mandamus to compel the Government to provide the requested report or, alternatively, to provide for in camera judicial review of the report. Appellant cited United States v. Huberty, 53 MJ 369 (2000), as authority.

On October 19, 2000, after considering appellant's petition for extraordinary relief and the Government's answer, this Court ordered the case returned to the Court of Criminal Appeals for "reconsideration of its denial of petitioner's motion for discovery in light of United States v. Huberty, 53 MJ 369 (2000)." United States v. Campbell, 54 MJ 349 (2000)(summary disposition).

On March 13, 2001, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion during its review of the merits of the case under Article 66, UCMJ, 10 USC § 866. With respect to appellant's Huberty claim, the court stated:

> We find no evidence of prosecutorial misconduct. The record of trial is so clear, we also see no need for us to grant the appellant's motion for discovery or to review the ethics investigation

5

> in camera.[2]  Our decision on this matter is made
> easy by the fact that aside from the rhetoric,
> SrA Leavitt's declaration does not state that he
> lied about the appellant's use of marijuana in
> his written statements or during his testimony at
> trial.  Therefore, if indeed any prosecutorial
> misconduct occurred during the prosecution of
> related cases, it did not involve the appellant.

Unpub. op. at 3. The court also indicated that it
reconsidered appellant's motion pursuant to our order of
October 19, 2000.  Having done so, it nonetheless concluded
that the motion should be denied.  Id. at 1.

We subsequently granted review of the following issue:

I

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED
> IN PERSISTING TO REFUSE TO GRANT APPELLANT'S MOTION
> FOR DISCOVERY, EVEN AFTER THE COURT OF APPEALS FOR THE
> ARMED FORCES ORDERED THE COURT OF CRIMINAL APPEALS TO
> RECONSIDER ITS PRIOR REFUSAL TO DO SO IN LIGHT OF
> UNITED STATES V. HUBERTY, 53 MJ 369 (2000).

In addition, we asked the parties to brief the following
issue raised in appellant's petition for a new trial:

II

> WHETHER THIS HONORABLE COURT SHOULD ORDER AN IN CAMERA
> REVIEW OF RELEVANT EVIDENCE WHICH COULD ESTABLISH
> APPELLANT'S ENTITLEMENT TO A NEW TRIAL.

For the reasons stated below, we return the record of
trial to the Judge Advocate General of the Air Force for
remand to the Court of Criminal Appeals for further review.

---

[2] Air Force TJAG Policy Number 2, Professional Responsibility, paragraph 8b, distinguishes an "inquiry" into possible ethics violations from an "ethical investigation" conducted by most licensing authorities.

6

United States v. Campbell, No. 01-0467/AF

Given our disposition of this case, appellant's petition for new trial is denied.

## Discussion

Appellant argues that he has made a threshold showing that there was a pattern of prosecutorial misconduct in his and other related cases.  He further contends that the Government inquired into these allegations, and that such inquiry "is potentially relevant" to his appeal.  Final Brief in Support of Petition Granted at 5.  Appellant argues that, as a matter of legal policy, while in camera review could be performed by this Court, the court below, or a military judge on remand for a DuBay[3] proceeding, in the future, such issues might best be addressed in a process similar to that governing collateral attacks on the sentence in federal civilian courts pursuant to 28 USC § 2255.  Appellant notes that in this case, he seeks in camera review by any appropriate judicial body, so long as such review is expeditious.  Moreover, appellant contends that in Huberty, this Court resolved the legal question presented and that pursuant to this Court's order of October 19, 2000, in camera judicial review by the Court of Criminal Appeals should proceed post haste.

_____

[3]17 USCMA 147, 37 CMR 411 (1967).

7

United States v. Campbell, No. 01-0467/AF

The Government contends that to the extent Huberty is read to establish a right to and a mechanism for appellate discovery, such right goes beyond the plain text and legislative intent of the Uniform Code of Military Justice, as well as federal case law. The Government argues that there is no authority for appellate discovery by either this Court or the Courts of Criminal Appeals found within Article 66, supra, or Articles 67 and 73, UCMJ, 10 USC §§ 867 and 873; therefore, such authority does not exist. In this regard, the Government notes that Article 67(a)(2) states this Court "shall review the record in . . . all cases reviewed by a Court of Criminal Appeals . . .," and such record, it contends, necessarily is limited to the record of the court-martial alone. (Emphasis added.)

Finally, the Government argues that even if appellant's allegations were true, he would not be entitled to a new trial. Of the three unsworn statements proffered by appellant as a predicate for further discovery, only Leavitt's is from a person who testified at appellant's trial. Leavitt's statement does not assert that he lied at appellant's court-martial, only that prosecutors pressured him into a particular line of testimony. According to Leavitt, "I testified in his trial that they wanted me to twist the truth." As a result, the Government concludes,

8

United States v. Campbell, No. 01-0467/AF

the question of prosecutorial pressure was explored at trial before the members and does not warrant further review.

Both appellant and the Government agree with the following proposition in the Government's brief:

> A system through which the military appellate courts address post-trial issues such as unlawful command influence and prosecutorial misconduct is already well established within the military judicial process. See [United States v.] DuBay, [17 USCMA 147,] 37 CMR 411 [(1967).] Military appellate courts return cases to the trial level when it becomes necessary to develop facts not contained within the record of trial, and where affidavits do not suffice. Id. at 413; United States v. Ginn, 47 MJ 236 (1997).

Final Brief on Petition for Grant of Review and Petition for New Trial at 9. However, the parties disagree as to whether a DuBay hearing should be the exclusive mechanism for resolution of post-trial discovery issues, as well as the threshold for invoking such a process.

### Discussion

In Huberty, the accused claimed he had hearsay information that a government expert's credentials had been suspended, removed, or limited at the time of trial. Using a Freedom of Information Act request for such credentialing information, the accused sought to ascertain from the Office of the Air Force Surgeon General whether any adverse actions had been taken against the expert. That request

9

was denied.  He subsequently sought an order from the Court of Criminal Appeals for in camera review by that court of the expert's records.  The Court of Criminal Appeals denied this request, noting that "appellant offers no information that connects the alleged credentialing action against the medical care provider with the testimony that the medical provider provided at his trial."  Huberty, 53 MJ at 370-71. After an appeal was made to this Court, we ordered production of the records "so that an in camera inspection may be made to determine whether information is contained therein that would reasonably support a petition by appellant for a new trial."  Id.

What this Court addressed in Huberty was an anomaly between military courts and civilian courts previously noted in DuBay.  "Normally, collateral issues of this type would, on remand in the civil courts, be settled in a hearing before the trial judge.  The court-martial structure, . . . however, is such that this cannot be accomplished."  DuBay, supra at 149 n.2, 37 CMR at 413 n.2. Huberty did not establish, per se, a structure to address this anomaly, nor did it establish a threshold standard for obtaining a post-trial evidentiary hearing where discovery might be necessary.

United States v. Campbell, No. 01-0467/AF

When faced with a post-trial dispute over discovery relevant to an appeal, an appellate court needs to conduct an analysis similar to that used in United States v. Lewis, 42 MJ 1 (1995), for claims of ineffective assistance of counsel. First, it must determine whether the appellant met his threshold burden of demonstrating that some measure of appellate inquiry is warranted. In addressing this question, the court should consider, among other things:

(1)  whether the defense has made a colorable showing that the evidence or information exists;

(2)  whether or not the evidence or information sought was previously discoverable with due diligence;

(3)  whether the putative information is relevant to appellant's asserted claim or defense; and

(4)  whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.

Second, if the court decides inquiry is warranted, it must determine what method of review should be used. As a general matter, "[a] Court of Criminal Appeals has discretion . . . to determine how additional evidence, when required, will be obtained, e.g., by affidavits, interrogatories, or a factfinding hearing." Id. at 6. Such determinations are necessarily contextual and not generally conducive to a single solution. However, we recognize that a Court of Criminal Appeals may conclude in

11

some instances, such as where there is the need to discover particular facts, that a DuBay evidentiary hearing may be necessary. In determining whether a DuBay hearing is warranted to resolve a factual matter, the Courts of Criminal Appeals should be guided by the standard enunciated in Ginn.

In Ginn, we held that "a hearing need not be ordered if an appellate court can conclude that 'the motion and the files and records of the case . . . conclusively show that [an appellant] is entitled to no relief.'" 47 MJ at 244 (quoting United States v. Giardino, 797 F.2d 30, 32 (1st Cir. 1986))(emphasis added). Expounding upon this standard, we adopted the general rule followed by the federal civilian courts that a hearing is unnecessary when the post-trial claim "(1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case," i.e., "they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" Id. (quoting United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993)).

In this case, neither party contests that appellant seeks the information at issue as part of his direct appeal of his court-martial conviction pending before this Court. The Government argues that the information, if it exists,

is not relevant to and, in any event, would not change the outcome of appellant's appeal.  Thus, the question is not one of appellate authority to review the putative report in camera, but whether appellant has done enough to establish the relevance of the information sought to his allegation of prosecutorial misconduct to warrant such appellate review.

We conclude in this case that we need not reach a conclusion as to the applicability of the Ginn standard. Appellant's case reflects the specific facts and circumstances of the prior proceedings.  First of all, it was argued under a Huberty rubric.  As noted above, Huberty is an exercise of appellate authority to examine allegations and facts relevant to an appeal; however, it did not establish a legal regime nor set parameters for addressing issues of appellate review of post-trial disputes over discovery relevant to an appeal.  Second, a majority of this Court anticipated, but did not necessarily direct, that the order of October 19, 2000, would result in a determination by the lower court whether the purported report of an inquiry existed and, if so, whether its contents suggested the need for further review of appellant's allegation of prosecutorial misconduct.  Under the particular facts of this case, including the extensive

13

appellate history involved, we conclude that the interests of justice are better served by again remanding to the Court of Criminal Appeals to determine with certainty whether a report exists, and if it does, to determine in camera whether it is relevant to appellant's appeal and whether further inquiry is warranted. Otherwise, appellate courts should limit Huberty's reach to its facts and apply the Lewis framework as elaborated above.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. The Court of Criminal Appeals shall determine whether the report appellant seeks exists. If such report exists, the court shall order it produced and issue any protective orders necessary to protect its confidentiality. The court shall then review the report, attach it to the record, and determine its relevance to appellant's assignments of error. If an additional factual inquiry is necessary, that court shall first order a DuBay hearing. If relevant information is disclosed, the court will reconsider appellant's claim of prosecutorial misconduct pursuant to

Article 66.  Thereafter, the provisions of Article 67 shall

apply.

United States v. Campbell, No. 01-0467/AF

SULLIVAN, Senior Judge (concurring in the result):

Appellant requested that the Court of Criminal Appeals order the Government to produce for defense review a copy of an investigation of prosecutorial misconduct at his court-martial. I would remand this case to the Court of Criminal Appeals to consider this request in light of this Court's decision in United States v. Ginn, 47 MJ 236 (1997). Neither United States v. Huberty, 53 MJ 369 (2000), nor United States v. Lewis, 42 MJ 1 (1995), provides a comprehensive approach or framework in which to resolve post-trial requests for discovery. While United States v. Ginn particularly addresses requests for post-trial fact-finding hearings, it can be readily used for resolving other requests for post-trial discovery.