*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, COGLEY, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Craig R. BECKER**
Lieutenant (O-3), U.S. Navy
*Appellant*

**No. 202200212**

_____

Decided: 11 September 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Aaron C. Rugh (arraignment and motions)
Stephen F. Keane (trial)

Sentence adjudged 30 April 2022 by a general court-martial convened at Mons, Belgium, consisting of officer members. Sentence in the Entry of Judgment: confinement for life with the possibility of parole and a dismissal.[1]

For Appellant:
*Major Joshua P. Keefe, USMC*
*Mr. David Sheldon*

---

[1] Appellant was credited with having served 831 days of pretrial confinement.

For Appellee:
*Major Candace G. White, USMC*
*Lieutenant Commander Paul S. LaPlante, JAGC, USN*

Senior Judge KISOR delivered the opinion of the Court, in which Judge COGLEY and Judge DALY joined.

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

KISOR, Senior Judge:

Before the Court are nine pending motions including: (1) Appellant's Motion to Compel Post-Trial Discovery dated 9 August 2023, as amended on 21 August (and Appellee's Opposition dated 14 August 2023); (2) Appellee's Motion to Strike Appellant's Motion to Compel Post-Trial Discovery dated 11 August 2023; (3) Appellant's Motion to Exceed Word Count Limitation dated 15 August 2023; (4) Appellant's Motion for Tenth Enlargement of Time dated 16 August 2023; (5) Appellant's First and (6) Second Motions to Attach Documents, both dated 21 August 2023 (and Appellee's Oppositions to each, both dated 28 August 2023); (7) Appellant's Second Motion to Compel Post-Trial Discovery, dated 21 August 2023 (and Appellee's Opposition dated 28 August 2023); (8) Appellant's Third Motion to Attach, filed after oral argument, dated 30 August 2023; and (9) Appellee's Motion to Stay Ruling on Appellant's Second Motion to Compel dated 7 September 2023.

The Court now **GRANTS** Appellant's Motion for an Overlength Brief up to double the word count limit specified in Rule 17.3 of this Court. This Court also **GRANTS** Appellant's Motion for Tenth Enlargement of Time.[2] The Court **DENIES** all of the remaining motions.

## I. BACKGROUND

A general court-martial convicted Appellant, contrary to his pleas, of the premeditated murder of his wife and related offenses that occurred in Mons, Belgium, in October 2015, and sentenced him to life imprisonment with the

———————————

[2] The Government withdrew its opposition to Appellant's Motion for Tenth Enlargement of Time, and did not oppose the Motion to Exceed Word Count Limitation.

possibility of parole.[3] The death occurred off base, and was investigated primarily by the Belgian Federal Police who, in March 2016, arrested and detained Appellant as a suspect in the murder of his wife. Although the United States Navy had concurrent jurisdiction over Appellant and over the alleged offense under the Uniform Code of Military Justice, the Navy did not invoke primary jurisdiction until the Belgian Federal Police completed its investigation. This occurred on 2 January 2018 after the Secretary of Defense denied the Navy's request to cede primary jurisdiction to Belgian authorities.

Appellant's appeal was docketed with this Court on 21 September 2022. The case has a trial transcript of 4,055 pages and a total Record of Trial of approximately 8,507 pages. On 17 November 2022, the Court held a chambers conference with the parties to discuss the timeline for the filing of Appellant's brief. Counsel for Appellant advised this Court they anticipated filing a brief by April 2023.

Sometime in December 2022, Civilian Appellate Defense Counsel filed numerous Freedom of Information Act [FOIA], 5 U.S.C. § 552, requests with various entities within the Department of Defense and the Department of the Navy.

On 23 March 2023, following the filing of Appellant's Motion for a Fifth Enlargement of Time, the Court held a second chambers conference to discuss the progress of this case. Notwithstanding that Civilian Appellate Defense Counsel had not received the documents he requested under FOIA, Counsel for Appellant advised this Court they expected to file a completed brief with assignments of error by June 2023.

On 24 July 2023, the Court held a third chambers conference to discuss Appellant's Motion for Ninth Enlargement of Time. That Motion stated August 2023 was "a hard deadline and no further enlargements will be sought beyond August 2023."[4] During that chambers conference, Civilian Appellate Defense Counsel stated he had "low-to-medium confidence" the brief would actually be filed by the end of August (as noted in their Eighth Motion for Enlargement of Time). The "hard deadline" language in the motion was explained as a cut-and-paste error. Military Appellate Defense Counsel also conceded that Appellant, who is in confinement, is being prejudiced by the delay. (Appellant did nevertheless consent to his counsel's enlargement of time requests.) This was also the first motion in which Counsel for Appellant indicated to this Court that

---

[3] The charge sheet, dated 29 January 2019; Entry of Judgment.

[4] Appellant's Motion for Ninth Enlargement of Time, dated 19 July 2023, at 4.

part of the need for additional time to finalize their brief was related to (unspecified) pending FOIA requests. Counsel for Appellant verbally provided September 2023 as a more likely time for when they expected to file a completed brief.

From 9 to 21 August 2023, this Court received four interrelated motions. Appellant requests this Court grant: (1) post-trial discovery into any applications for post-retirement employment of the military judge; (2) post-trial discovery, related to FOIA requests concerning communications among U.S. Government officials preceding the Secretary of Defense's denial of the Navy's request to cede jurisdiction to Belgian authorities; (3) more time to file their brief; (4) to attach certain documents related to post-trial discovery motions; (5) an overlength brief. The Government, for its part, filed a motion to strike Appellant's motion for post-trial discovery for procedural noncompliance, and further filed an opposition to each of the discovery motions.

On 16 August 2023, we issued an Order Directing Oral Argument on the pending Motions before the Court (which we amended on 23 August, to account for later filings). Then on 21 August 2023, Appellee filed a motion to reconsider that Order, withdrawing the previously opposed Motion for a Tenth Enlargement of Time and indicating its non-opposition to an overlength brief. On 29 August we held an oral argument on the pending motions. On 30 August Appellant filed his Third Motion to Attach certain documents that were produced to him via FOIA request, which were discussed at the oral argument the previous day. Then on 7 September, Appellee filed a Motion to Stay Ruling on Appellant's Second Motion to Compel.

## II. Discussion

Notwithstanding the Government's withdrawing its opposition to Appellant's Motion for Tenth Enlargement of Time (having opposed the eighth and ninth such motions) this Court has an independent duty to ensure the timely processing of appeals before this Court.[5] Central to the resolution of all of the pending motions are the merits of Appellant's interrelated motions for post-trial discovery and to attach various documents.

**A. Post-trial discovery into Col Keane's employment application(s) and post-trial discovery of various documents also requested under the Freedom of Information Act.**

*1. Standards of review and applicable law.*

---

[5] *See United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).

a. Disqualification of a military judge generally.

Rule for Courts-Martial 902(a) states that a military judge shall disqualify himself or herself in any proceeding in which the military judge's impartiality might reasonably be questioned. To be disqualifying, the bias must be "personal, not judicial, in nature."[6] There are two types of bias: actual bias and appearance of bias. The test for identifying an appearance of bias is "whether a reasonable person knowing all the circumstances" would conclude that the military judge's impartiality might reasonably be questioned.[7] Rule for Courts-Martial 902(b) then states several specific grounds for which a military judge shall recuse himself or herself.

b. Post-trial discovery.

As discussed below, this Court has a limited ability to order discovery or to consider matters outside the record of trial. If an appellant seeks post-trial discovery, the Court of Appeals for the Armed Forces has set forth the following (nonexclusive) list of factors for a service court criminal appeals to consider in determining whether the appellant has met his or her burden of demonstrating that some measure of appellate inquiry is warranted:

> (1) Whether the defense has made a colorable showing that the evidence or information exists;

> (2) Whether the evidence of information sought was previously discoverable with due diligence;

> (3) Whether the putative information is relevant to Appellant's asserted claim or defense;

> (4) Whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.[8]

c. Motions to attach.

As a threshold observation, Article 66, UCMJ, governs the scope of this Court's review of findings and sentences. We may act only with respect to the findings and sentence as approved by the convening authority. We may affirm only such findings of guilty and the sentence or such part or amount of the

---

[6] *United Sates v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000).

[7] *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) (citations omitted).

[8] *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002).

sentence, as we find are correct in law and fact and determine, on the basis of the entire record, should be approved.[9]

In *United States v. Jessie*, the Court of Appeals for the Armed Forces explained what constitutes the "entire record" and what types of supplemental materials may be properly attached to the record.[10] The court found that while the UCMJ does not provide a statutory right for an accused and his counsel to supplement the "record" after the convening authority has acted, there are a few circumstances in which a court of criminal appeals may supplement the record, including: (1) when reviewing prison conditions under Article 66(c), UCMJ, if the record contains information about those conditions; (2) when extra-record fact determinations are necessary predicates to resolving appellate questions for issues raised by the record, but not fully resolvable by the materials in the record; and (3) when considering allegations concerning violations of the Eighth Amendment's prohibition of cruel and unusual punishment, as well as violations of an appellant's rights under Article 55, UCMJ.[11]

*2. Discovery into Colonel Keane's applications for post-retirement employment.*

In his (Amended) Motion, Appellant requests this Court order the production "of all materials relating to *any* federal job application Colonel (Col) Stephen Keane's [sic] USMC (ret.) submitted while serving as trial judge in the instant case, including all materials related to his current job as a Veterans Law Judge with the Department of Veterans Affairs."[12]

Col Keane invited voir dire on two occasions, stating at a 39(a) session that "I'm not aware of any matter that I believe may be grounds for challenge against me"[13] and on the first day of the trial "I have not acted in any manner that might tend to disqualify me."[14] Trial defense counsel did not conduct voir

---

[9] *United States v. Stocton*, No. ACM S32443, 2018 CCA LEXIS 290, at \*4 (A.F. Ct. Crim. App. June 6, 2018).

[10] *United States v. Doyle*, No. 201900190R, 2022 CCA LEXIS 458, at \*7 (N-M. Ct. Crim. App. July 28, 2022 (citing *United States v. Jessie*, 79 M.J. 437, 438 (C.A.A.F. 2020). Procedurally, motions to attach documents are governed by the United States Navy-Marine Corps Court of Criminal Appeals Rules of Appellate Procedure, Rules 6.1 and 23.4.

[11] *Id.*

[12] Appellant's Amended Motion to Compel Post-Trial Discovery at 1.

[13] R. at 628.

[14] R. at 884.

dire of the military judge. The (Amended) Motion and Appellant's argument before this Court contend that because Col Keane became a Veterans Law Judge within a short time after taking the final action in this case, Col Keane must have applied for the position while serving as military judge. According to Appellant, this raises a potential bias that Col Keane should have disclosed at trial and invited further voir dire on the issue.

Appellant attached to his Motion for post-trial discovery certain documents, which are unaccompanied by any sort of declaration as to their authenticity or explanation as to their origin. Appellate Defense Counsel informs the Court that the undated first document contains "Screen shots of Stephen Keane's LinkedIn Account" indicating that Stephen Keane has an entry for "Veterans Law Judge" from November 2022-present.[15] The second document is a fiscal year 2022 annual report from the Department of Veterans Affairs listing the names of the veterans law judges, including Stephen Keane. The Government, for its part, implicitly challenges the authenticity of these documents, stating "without his enclosures, Appellant is unable to make a colorable showing that Col Keane is employed by the Department of Veterans Affairs, let alone that the requested documents exist."[16]

Certainly this Court may resolve this particular dispute by taking judicial notice that Col Keane was employed by the Department of Veterans Affairs as a Veterans Law Judge at some point in 2022. Without question appellate courts may take judicial notice of facts that are not reasonably subject to dispute.[17] In a case with a similar issue to this, the Air Force Court of Criminal Appeals recently took judicial notice that a military judge who was a reservist was employed as an Assistant United States Attorney because that was a fact not reasonably subject to dispute.[18] We will take judicial notice of Col Keane's post-retirement employment with the Department of Veterans Affairs, based on the publicly available annual report from the Department of Veterans Affairs.[19]

---

[15] Appellant's Amended Motion to Compel Post-Trial Discovery at 3, encl. 1.

[16] Appellee's Opposition to Appellant's Motion to Compel Post-Trial Discovery at 4.

[17] Mil. R. Evid. 201(b)(2).

[18] *United States v. Rodriguez*, No. ACM 40217, 2023 CCA LEXIS 125 (A.F. Ct. Crim. App. Mar. 9, 2023).

[19] We pause to note that the issue of military judge's applications for post-retirement employment is an important one, and we observe that military judges have an obligation to disclose any grounds for challenge against them, which unquestionably includes when a military judge is seeking future employment with one of the parties

With respect to the *Campbell* factors, we will assume (without deciding) that while presiding over this court-martial, Col Keane was seeking, or had been offered, employment with the Department of Veterans Affairs effective upon his retirement from the Marine Corps. However, we can see no nexus between that application and his duties in this case. We can see no reasonable possibility that Col Keane could have either developed an actual bias, or created the appearance of bias, related to either a pending or an approved application for employment with the Department of Veterans Affairs. Thus, this case is readily distinguishable from *In re Al-Nashiri*, *United States v. Armendariz*, and *Bergdahl v. United States*. In each of those cases there was a clear and direct nexus between the case the military judge was presiding over and the prospective employment of that military judge. In the cases of *In re Al-Nashiri* and *United States v. Armendariz*, the prospective employment was with one of the parties to the court-martial, making a direct nexus between the military judge's prospective employment and the pending cases.

In *Bergdahl*, the former President (while he was still a presidential candidate) and a then-sitting U.S. Senator, both commented on the court-martial case while it was in a pretrial posture, and the former President also made certain public comments after becoming President.[20] Although the agency to which the military judge applied was not a party to the *Bergdahl* case, both the former President and the U.S. Senator vilified Bergdahl and publicly called for his harsh punishment. The former President noted that "deserters used to be shot," and the U.S. Senator threatened to convene hearings in the Senate Armed Services Committee if Bergdahl did not receive a punishment.[21] There were two particularly important factors in the District Court for the District of Columbia's analysis of the nexus between the military judge's job application

---

to the case. *See United States v. Armendariz*, 82 M.J. 712, 724 (N.M. Ct. Crim. App. 2022) (holding that a military judge who was presiding over the case was seeking employment with the prosecution office in that Circuit should have disclosed that conflict); *In re Al-Nashiri,* 932 F. 3d 224 (D.C. Circuit 2019) (granting a writ of mandamus because the military judge (of the military commissions) was seeking employment with the United States Department Of Justice, which was participating in the military commission prosecution over which he was presiding); *see generally ABD Al Hadi Al-Iraqi v. United States*, 455 F. Supp. 3d 1273, (C.M.C.R. 2020) (stating that a Military Commission Judge's application for a position within the Department of Justice as an immigration judge disqualified him from serving as a presiding judge on the military commission).

[20] *Bergdahl v. United States,* 2023 U.S. Dist. LEXIS 127510 (D.D.C. July 25, 2023).

[21] *Id.* at *64.

and his role in the *Bergdahl* case. They were (i) that the former President was the Chief of the Executive Branch; and (ii) that the military judge used as a writing sample an order he wrote denying relief on one of Bergdahl's motions on unlawful command influence resulting from the former President's comments. [22] These factors are not present in this case.

The District Court observed that a reasonable person, knowing all of the facts in that case, might believe the military judge had the former President's desires in mind and acted in the hope of improving his chances at being hired.[23] Based on those factors, the respective courts in *Al-Nashiri, Armendariz,* and *Bergdahl,* concluded that a reasonable person, knowing all of the facts, could believe that the military judge's impartiality in each of those cases was subject to question.

However, at oral argument in this case, Appellate Defense counsel was unable to articulate any nexus between Col Keane's employment application and any actual or appearance of bias that it could have shown. Appellate Defense Counsel clarified that Appellant is not alleging actual bias and that the motion for post-trial discovery is based on a theory of appearance of bias—that an application for *any* federal employment post-retirement creates a conflict of interest for a military judge. However, at oral argument, Appellate Defense Counsel readily conceded: (1) the Department of Veterans Affairs was not a party to this case at trial; (2) that Appellate Defense Counsel had no evidence that anyone at the Department of Veterans Affairs had any interest in this case; and (3) that Appellate Defense Counsel had no evidence that the President or Vice President of the United States had made any statements at all about this case.

Appellant has therefore not met his burden under *Campbell* to show that appellate inquiry is warranted. Appellant posits that "had Col Keane divulged the status of his application process within the executive branch, trial defense counsel would have had the opportunity to voir dire him to ensure his impartiality . . . and if necessary make a challenge for cause."[24] We are simply not persuaded that that this argument has any merit. Employment with the Department of Veterans Affairs, without more, is simply too attenuated from the parties or any other identified issues in this particular case. Unlike *Bergdahl,*

---

[22] *Id.* at *90-93.

[23] *Id.*

[24] Appellant's Motion to Compel Post-Trial Discovery at 6.

there is no allegation that the current President or any other leader with potential hiring influence over Veterans Law Judges at the Department of Veterans Affairs has made any public comments about Appellant. Appellant's theory of appearance of bias is dubious at best, and does not justify the fishing expedition into Col Keane's job applications that Appellant now seeks. Accordingly, under *Campbell*, there is no reasonable probability that the result of the proceeding would have been different if any existing post-retirement employment application to that agency had been disclosed.[25]

We therefore deny the motion for post-trial discovery. The issue of any application to the Department of Veterans Affairs for post-retirement employment without more does not come close to implicating an appearance of bias. We are not convinced that that a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned.[26] We likewise deny Appellant's motion to attach LinkedIn documents related to Col Keane's employment as moot by taking judicial notice of his employment with the Department of Veterans Affairs, as indicated in the publicly available Annual Report.

With respect to any applications elsewhere within the federal government, Appellant fails to show that such information exists or that it would be relevant to a claim or defense, or that it could have affected the outcome of this case.[27] Moreover, at oral argument Appellate Defense Counsel conceded that their belief that Col Keane had applied for other federal jobs was speculation. With respect to whether any of this could have been discovered with due diligence at trial, trial defense counsel did not vior dire the military judge on this issue,[28] and we will not speculate on what the questions or answers would have been at this appellate stage of the proceeding.

---

[25] *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002).

[26] *See* R.C.M. 902(b); *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) (citations omitted).

[27] *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002). We also note that Appellant's motion for "all materials related to any federal job application" is facially overbroad. We cannot see how a law school transcript, for example, would have any relevance at all. At oral argument appellate defense counsel conceded this larger point, but argued that a writing sample, if it was required and came from Col Keane's involvement in this case, would be relevant.

[28] R. at 628.

*3. Post-trial discovery related to documents sought in pending FOIA requests.*

Appellant also requests this Court order post-trial discovery "for the production of all materials related to the decision by the Navy to recommend that the United States cede jurisdiction over Appellant to Belgium."[29] As evidence, Appellant concomitantly moves to attach to the record certain responses to the FOIA requests (some of which are redacted), correspondence related to them, and certain documents which were apparently produced.

Appellant states that he "will assert that the Navy committed unlawful command influence in attempting to cede jurisdiction to the Belgians" and that "his constitutional rights were violated by the United States' lengthy delay in asserting jurisdiction."[30] Appellate discovery is manifestly unnecessary here as the timeline and the machinations of the decision-making in this case between October 2015 and January 2018, the reasons behind that Department of the Navy's request not to assert primary jurisdiction, and the Secretary of Defense's denial of that request on 2 January 2018, are comprehensively explained in a lengthy document already contained in the Record.[31]

We are unpersuaded that post-trial discovery into internal communications regarding when, or whether, to cede jurisdiction over Appellant to the Kingdom of Belgium would provide a reasonable probability that the result of the proceeding would have been different if additional information had been disclosed. Certainly, if Appellant chooses to re-raise a deprivation of his right to a speedy trial, and/or make a claim of unlawful command influence as an Assignment of Error in his upcoming brief, we believe that those issues will be fully resolvable on the existing Record, especially given the extensive litigation of the speedy trial issue at trial and the documents contained in the Record.[32]

We are mindful that in a well-reasoned opinion in *United States v. Tucker*, the Coast Guard Court of Criminal Appeals has observed that claims of unlawful command influence implicate the fairness, integrity, or

---

[29] Appellant's Second Motion to Compel Post-Trial Discovery at 1.

[30] Appellant's Second Motion to Compel Post-Trial Discovery at 12.

[31] App. Ex. V, Attachment W. The United States unquestionably had jurisdiction, at all stages of this case, over Appellant and over the offenses charged.[31] Moreover, there is no statute of limitations applicable to Article 118, UCMJ.

[32] *See* App. Exs. V, LXXXVI. Of course, we retain the authority to order affidavits, a *Dubay* hearing or otherwise revisit this ruling after reading Appellant's brief and the Government's Answer.

public reputation of the proceedings themselves.[33] Appellate courts have, accordingly, considered evidence of them without regard to whether they were previously raised in the record.[34]

But we can readily distinguish the CGCCA's opinion in *Tucker,* as the Appellant here failed to provide *any* evidence of actual or apparent UCI in his attachments.[35] Further, the substance of the communications contained in the documents he does attach are already completely addressed within the existing record of trial.[36] Accordingly, we deny Appellant's Second and Third Motions for Post-Trial Discovery and the related Motions to Attach.

### B. Motion for Tenth Enlargement of Time

In Appellant's Motion for Tenth Enlargement of Time, he states "[i]f this tenth enlargement is granted, Appellate Defense Counsel are committed to filing a completed brief no later than the end of September 2023, and will not require any enlargements that go beyond 30 September 2023.[37] This request is unopposed by the Government. We therefore grant the motion.

### C. Motion for Overlength Brief

Appellant also brings a Motion to Exceed Word Count Limitation, which the Government does not oppose. Rule 17.3 of this Court's Rules of Practice and Procedure provides that principal briefs shall not contain more than 15,000 words. In this case, Appellant correctly states that the Record contains over 8,400 total pages (4,055 of trial transcript), and that he is serving a life sentence for a conviction for premeditated murder. In his motion, Appellant does not specify how many extra words he desires, but we see good cause to double the word count. Accordingly, Appellant may file a brief of up to 30,000 words along with a certification of the word count.

---

[33] *United States v. Tucker*, 82 M.J. 533, 565 (C.G. Ct. Crim. App. 2022).

[34] *Id.*

[35] There is a certain circularity to Appellant's argument that he needs post-trial discovery into government officials' communications about when and whether the United States should assert primary jurisdiction over Appellant's case in order to be able to identify the nature of the alleged unlawful command influence.

[36] App. Ex. V.

[37] Appellant's Motion for a Tenth Enlargement of Time at 7.

**D. Government's Motion to Strike**

The Amended Motion to Attach moots the Government Motion to Strike, as conceded by Government Counsel at oral argument. Accordingly, the Government's motion is denied as moot.

## III. CONCLUSION

Having reviewed the underlying motions and responses, and considered the oral arguments of counsel on 29 August 2023, it is, on this 11th day of September 2023,

**ORDERED:**

1.  That Appellant's (Amended) Motion to Compel Post-Trial Discovery dated 21 August 2023 is **DENIED**.

2.  That Appellant's Second Motion to Compel Post-Trial Discovery dated 21 August 2023 is **DENIED**.

3.  That Appellee's Motion to Strike Appellant's Motion to Compel Post-Trial Discovery dated 11 August 2023 is **DENIED AS MOOT**.

4.  That Appellee's Motion to Stay Ruling on Appellant's Second Motion to Compel dated 7 September 2023 is **DENIED AS MOOT**.

5.  That Appellant's Motion to Exceed Word Count Limitation dated 15 August 2023 is **GRANTED UP TO 30,000 WORDS**.[38]

6.  That Appellant's First Motion to Attach is **DENIED AS MOOT**.

7.  That Appellant's Second Motion to Attach is **DENIED.**

8.  That Appellant's Third Motion to Attach is **DENIED.**

9.  That Appellant's Motion for Tenth Enlargement of Time dated 16 August 2023 is **GRANTED**. Appellate defense counsel shall file Appellant's brief and assignment of errors, containing no more than 30,000 words, no later than September 30, 2023.

---

[38] N-M. Ct. Crim. App. R. 17.3.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

Copy to:
45 (Maj Keefe);
46 (Maj White; LCDR LaPlante);
02;
Mr. Sheldon