# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39530**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Austin C. CARROLL**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 January 2020

———————————

*Military Judge:* Christopher M. Schumann (arraignment); Jennifer E. Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 2 months, reduction to E-2, and a reprimand. Sentence adjudged 12 June 2018 by GCM convened at Nellis Air Force Base, Nevada.

*For Appellant:* Captain M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of one specification of assault consummated by a battery in violation of Article

128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for two months, reduction to the grade of E-2, forfeiture of $1,000.00 pay per month for four months, and a reprimand. The convening authority disapproved the forfeitures of pay and approved the remainder of the sentence.

Appellant raises eight issues on appeal: (1) whether the military judge abused her discretion in allowing rebuttal testimony from Appellant's squadron commander regarding Appellant's deployments; (2) whether trial defense counsel's failure to take steps to obtain access to classified information denied Appellant effective assistance of counsel; (3) whether Appellant's inability to discuss classified information with his appellate defense counsel denied him the right to counsel; (4) whether a missing appellate exhibit constitutes a substantial omission from the record of trial that warrants relief; (5) whether Appellant's sentence was inappropriately severe; (6) whether the Government violated Appellant's right to speedy trial under Article 10, UCMJ, 10 U.S.C. § 810; (7) whether Appellant was denied his right to counsel when he was prohibited from contacting his counsel for five days while in pretrial confinement; and (8) whether trial counsel committed prosecutorial misconduct by failing to provide a nonparticipation memorandum signed by the victim to the convening authority prior to referral of the charges.[3,4] With respect to issues (7) and (8), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issues, we find no material prejudice to Appellant's substantial rights and we affirm the findings and sentence.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded guilty to a lesser included offense of the charged offense of aggravated assault with a dangerous weapon likely to produce death or grievous bodily harm in violation of Article 128, UCMJ. The Government did not attempt to prove the greater offense. In addition, one specification of wrongful possession of a controlled substance, one specification of abusive sexual contact, one specification of indecent exposure, and one specification of wrongfully communicating a threat in violation of Articles 112a, 120, 120c, and 134, 10 U.S.C. §§ 912a, 920, 920c, 934, were withdrawn and dismissed with prejudice after arraignment.

[3] Appellant personally asserts issues (6), (7), and (8) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] We have modified the order of the issues from the order in which they are presented in Appellant's brief.

## I. BACKGROUND

Appellant entered active duty service in the Air Force in March 2008 and joined the communications career field. Over the course of his career Appellant was based at permanent duty stations in Virginia, Ohio, and Nevada. Between 2010 and 2017, Appellant deployed overseas to Japan, Afghanistan, Kuwait, Afghanistan again, and South Korea, for periods of six months or less. Beginning in 2017, Appellant experienced increasing behavioral and disciplinary problems. During this period, Appellant met and became friends with AR, a civilian woman who lived in the local community in Las Vegas, Nevada, with whom he would sometimes meet to discuss various issues in their lives.

On the night of 25 November 2017, AR invited Appellant to come to her off-base residence to talk. Appellant did so, bringing a pistol, a loaded magazine, and alcohol. After Appellant arrived, he placed the pistol and magazine on a countertop. This did not particularly alarm AR, because her boyfriend at the time also carried firearms. Appellant and AR sat on a couch, drank alcohol, and talked about problems in their lives. At some point, Appellant picked up the pistol and began to wave it around. Appellant expressed frustration with his command and stated, "I have killed people during my time in the Air Force and killing someone would make me feel better," or words to that effect. When AR asked Appellant how he would kill them, Appellant approached AR and held the pistol to her head, pressing the barrel of the weapon against her temple for approximately two seconds.

Shortly thereafter Appellant passed out on AR's couch. Upset, AR made a video call to a friend. During the call, AR put Appellant's pistol in her mouth and under her chin. The friend urged AR to stop, instructed her to wait outside, and drove to her residence. After AR's friend arrived, he convinced AR to call the civilian police, who eventually responded.

As a result of this incident and other earlier allegations not involving AR, Appellant was placed in military pretrial confinement on 27 November 2017 and remained there until his trial. Appellant's squadron commander preferred a total of five charges and specifications against Appellant on 5 February 2018, including *inter alia* aggravated assault against AR with a dangerous weapon likely to produce death or grievous bodily harm and communicating a threat against AR in violation of Articles 128 and 134, UCMJ. Appellant was arraigned on 21 March 2018. On 5 June 2018, the three charges and specifications unrelated to AR were withdrawn and dismissed with prejudice, leaving only the charges and specifications of aggravated assault and communicating a threat.

The court-martial resumed on 7 June 2018, when the military judge conducted a closed hearing on a defense motion to obtain mental health records

pursuant to Mil. R. Evid. 513. The court-martial recessed for the day at the conclusion of that hearing.

On 8 June 2018, Appellant entered a PTA with the convening authority whereby Appellant agreed, *inter alia*, to be tried by a military judge alone, to enter a reasonable stipulation of fact, to "waive all waivable motions," and to plead guilty to the lesser included offense of assault consummated by a battery against AR, in violation of Article 128, UCMJ. In return, the convening authority agreed, among other terms, to withdraw and dismiss with prejudice the charge of communicating a threat. When trial resumed on 12 June 2018, Appellant pleaded guilty to the lesser included offense in accordance with the PTA. After an appropriate inquiry, the military judge found Appellant guilty in accordance with his pleas.

During presentencing proceedings, the Defense called Appellant's then-spouse, Ms. VC, to testify. Ms. VC stated, *inter alia*, that after Appellant returned from his second deployment, which was to Afghanistan, she thought he suffered from post-traumatic stress disorder (PTSD). According to Ms. VC, Appellant's symptoms included nightmares and "fight or flight responses," during which Appellant would become very anxious in public places. Ms. VC testified that after Appellant's third deployment, which was to Kuwait, "[h]e didn't have too many issues . . . he still had a few nightmares, but it wasn't as bad as before." However, Ms. VC stated that after Appellant's fourth deployment he was "worse" compared to after his second deployment, "definitely down," "depressed," "very quiet," and "changed." Finally, Ms. VC testified that after Appellant's fifth deployment, which she said lasted "a few months," the "PTS[D] symptoms came back, but worse." These symptoms included "[n]ight sweats, [Appellant] jumping up in the middle of the night screaming, [Appellant] jumping out of bed and looking for his gun," and "panic attack[s]."

Among other exhibits, the Defense introduced a portion of the report of an inquiry into Appellant's mental capacity and mental responsibility ordered by the military judge pursuant to Rule for Courts-Martial (R.C.M.) 706. The report concluded that at the time of the offense, Appellant suffered from several mental disorders, including anxiety disorder and PTSD associated with his deployments, and alcohol dependence that developed from his inability to cope with his anxiety and PTSD.[5]

Appellant described the effects of his deployments in his oral unsworn statement to the court. Appellant stated:

---

[5] Notwithstanding these disorders, the report concluded Appellant was able to appreciate the quality and wrongfulness of his conduct. *See* R.C.M. 916(k).

> I've had five total deployments. All of the aspects of my last two are classified . . . . After returning from a fourth deployment, my symptoms got far worse than before. I began to start experiencing issues and [sic] September 2016. Constant nightmares, anxiety and panic attacks, hypervigilance, withdrawing from a family, fight or flight responses inside of stores, and a bout of severe depression. Once I began having panic attacks at work in December 2016, I sought out help from the military. . . . This was the first time that I've been diagnosed with PTSD . . . . Right after I began treatment [ ], I had my fifth deployment during that time, which exacerbated my symptoms even more. . . . I had bipolar memories as far back as 2012 after my . . . second deployment . . . . But it was manageable at the time. Each subsequent deployment just added to the power of the racing thoughts of what I had seen and lived through.

The Defense also submitted a written unsworn statement by Appellant which provided more detail about his career, and particularly his second and third deployments to Afghanistan and Kuwait, respectively. According to the statement, the details of Appellant's fourth and fifth deployments to "undisclosed locations" in 2016 and early 2017 were "classified," although with respect to the fourth deployment Appellant related, "We did however neutralize multiple High Value Targets . . . ." As in his oral statement, Appellant's written statement indicated his mental state significantly worsened after his fourth deployment, and was exacerbated by his fifth deployment.

After the Defense rested its presentencing case, the Government indicated it intended to call Appellant's squadron commander, Lieutenant Colonel (Lt Col) SG, as a rebuttal witness. Senior trial counsel explained that Lt Col SG was familiar with Appellant's fourth and fifth deployments. As to Appellant's fourth deployment, which was to Afghanistan, senior trial counsel proffered that Lt Col SG would testify that Appellant's role was to set up communications on the base, that he was not required to leave the base, and that neither Appellant "nor anyone else in the unit would have seen any type of combat." Lt Col SG would further testify that Appellant's "fifth deployment was to a first world country that hasn't had combat . . . in over 60 years," and that the deployment lasted only ten days. Senior trial counsel explained, "we believe this is rebuttal to the extent that [Appellant] has led this court to believe that his fourth and fifth deployments were combat and he came back with all this combat stress and PTSD that it since led to some of his actions."

Appellant's civilian defense counsel, Mr. RC, objected to Lt Col SG's testimony. He conceded that Appellant's fifth deployment lasted only "two weeks," and Ms. VC was mistaken when she testified it lasted "a few months;" however,

the Defense would "stipulate any time the Government wants for that particular purpose." However, Mr. RC contended the proffered testimony was otherwise not proper rebuttal because Appellant did not claim to have experienced "combat" during his fourth and fifth deployments. Mr. RC continued:

> As far as the undisclosed location goes, I'll be frank with you Ma'am. [Lt Col SG] specifically told me in a meeting, and [sic] the witness room, about 15 minutes ago, he does not want to get up and talk about this. Primarily, because so much of it is classified. And that it's [sic] been my problem all along, Ma'am. I have documents in [sic] classified. I have documents thing [sic] undisclosed location. As a matter of proffer before this Court, this morning, to get clarity, [Appellant's] First Sergeant told me yes, they are undisclosed locations, to the extent that you can say yes he was in Korea, or yes you can say he was in Afghanistan. But the specifics of the job, and what he was doing, more specifically where he was, that is all classified. And I'm hamstrung here, Ma'am. I can't look into these. I have no way to rebut what the Government is going to say, because at [sic] [Mil. R. Evid.] 505. And we're getting dangerously close to 505 material.

The military judge sought clarification: "With reference to the classified nature of some of [Appellant's] deployments, and your comment about being hamstrung, do you believe that in any way that your results of advocacy [sic] of [Appellant] has been impaired?" Mr. RC replied:

> No, Ma'am. However, we've [sic] will be coming dangerously close to that point, if the Government is allowed to put forth evidence, quite frankly, that my client is telling me is classified. At that point, Ma'am, I'm at a point where I either have to accept what the Government says, or we're going to have to delay this so that I can file an appropriate [Mil. R. Evid.] 505 motion to figure out exactly what part of it was undisclosed, what part of it is not disclosed, where he was in Korea, was he in Korea the entire time, what was his job there, what wasn't his job there. . . .

After additional argument, the military judge overruled the Defense's objection to Lt Col SG's testimony, which she found relevant to "repel, counteract, [and] disprove" the impression that Appellant's fourth and fifth deployments worsened his PTSD symptoms. The military judge conducted a balancing test pursuant to Mil. R. Evid. 403 and found the probative value of the proffered evidence was not substantially outweighed by the danger of unfair prejudice,

wasting time, misleading the court, or any other countervailing interest. However, she directed counsel for both sides not to "go into" any information that would potentially be classified.

When called, Lt Col SG provided brief rebuttal testimony regarding Appellant's fourth and fifth deployments. According to Lt Col SG, in May 2016 Appellant deployed to Kandahar, Afghanistan, as part of a reconnaissance squadron. Appellant's role was to "set up" secure and non-secure communication networks for the unit; Appellant had no "outside-the-wire missions" and saw no combat of any sort during that deployment. Lt Col SG testified Appellant's fifth deployment to an "undisclosed location" lasted ten days and was to a "first world country" where no combat was occurring. On cross-examination, Mr. RC clarified that Lt Col SG was not Appellant's commander during either the fourth or fifth deployment.

## II. DISCUSSION

### A. Lt Col SG's Rebuttal Testimony

#### 1. Law

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

The legal function of rebuttal evidence is to "explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Saferite*, 59 M.J. 270, 274 (C.A.A.F. 2004) (quoting *United States v. Banks*, 36 M.J. 150, 166 (C.M.A. 1992)) (additional citations omitted). "The scope of rebuttal is defined by evidence introduced by the other party." *Banks*, 36 M.J. at 166 (citations omitted). "Rebuttal evidence, like all other evidence, may be excluded pursuant to [Mil. R. Evid.] 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Saferite*, 59 M.J. at 274 (citing *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001). "Where a military

judge properly conducts a balancing test under Mil. R. Evid. 403, we will not overturn his decision unless there is a clear abuse of discretion." *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998) (citations omitted).

Whether an error is harmless is a question of law we review de novo. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (quoting *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003)). "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citations omitted).

### 2. Analysis

Lt Col SG's testimony was proper rebuttal evidence to Ms. VC's testimony and Appellant's unsworn statements introduced by the Defense. The Defense portrayed that Appellant's fourth and fifth deployments significantly worsened his PTSD symptoms, and implied that these deployments had been traumatic experiences. Lt Col SG's rebuttal testimony tended to counteract that impression by minimizing the extent to which Appellant witnessed or was exposed to combat, and clarified that the fifth deployment was much shorter than Ms. VC indicated in her testimony. *See Saferite*, 59 M.J. at 274.

In contrast to Mr. RC's argument at trial, who attempted to minimize the extent to which Lt Col SG's proffered testimony was inconsistent with Appellant's assertions, on appeal Appellant asserts Lt Col SG's testimony "directly contradicted the defense's evidence and undercut their entire mitigation case." Nevertheless, Appellant asserts the military judge abused her discretion because the probative value of Lt Col SG's testimony was outweighed by the danger of unfair prejudice, and therefore should have been excluded under Mil. R. Evid. 403. Specifically, Appellant argues the Government "was permitted to unfairly skirt the lines of classified information in order to dispute the validity of [Appellant's] PTSD symptoms," because the Defense could not meaningfully cross-examine Lt Col SG "without getting into classified material."

Where, as in this case, the military judge conducted a proper Mil. R. Evid. 403 balancing test on the record, we will not overturn her decision unless we find a clear abuse of discretion. *Ruppel*, 49 M.J. at 251. We do not find a clear abuse of discretion here, because the military judge could reasonably conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

First, Mr. RC asserted to the military judge that the classified nature of Appellant's deployments had not impaired his ability to represent Appellant. Mr. RC suggested his ability to advocate might be threatened "if the Government is allowed to put forth evidence . . . that [Appellant] is telling me is classified;" however, the military judge specifically forbade either party from "going into" classified matters, and Appellant has not asserted that anything Lt Col SG testified to was in fact classified.

Additionally, although Appellant complains that Lt Col SG's testimony was "misleading" in some way, he has not identified which if any of Lt Col SG's statements were inaccurate. To the extent anything in Lt Col SG's brief unclassified testimony was inaccurate, the Defense could have cross-examined him or presented its own witnesses to testify at a similarly unclassified level. To the extent the Defense truly believed disclosure of classified information was necessary in light of Lt Col SG's testimony, the Defense could have proceeded pursuant to Mil. R. Evid. 505, a potential course of action Mr. RC specifically alluded to. However, the Defense elected not to pursue that course.

Furthermore, Lt Col SG's testimony, although proper rebuttal evidence, was of limited significance in the broader context of the sentencing proceedings. Essentially, its effect was to indicate the circumstances of Appellant's fourth and fifth deployments were likely not as traumatic as the military judge might otherwise imagine them to have been, based on the Defense's presentencing case. However, Lt Col SG's testimony did not impugn Appellant's account of his previous deployment to Afghanistan in 2012 and his disturbing experiences there, nor the R.C.M. 706 report that at the time of the offense Appellant in fact suffered from PTSD and anxiety, among other disorders, for which he had received mental health counseling and medication. Nor was Lt Col SG's testimony facially inconsistent with anything the Defense presented, apart from Ms. VC's erroneous estimation of the length of the fifth deployment, as Mr. RC conceded at trial. In other words, Lt Col SG's testimony provided limited additional information that served to put Appellant's fourth and fifth deployments in the proper context, without deflecting the general thrust of the defense sentencing case.

Moreover, we note Appellant was tried by a military judge rather than by court members. "As the sentencing authority, a military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary." *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citations omitted). Accordingly, we are confident the military judge could put Lt Col SG's rebuttal testimony into its proper context without succumbing to the dangers of unfair prejudice.

Finally, assuming *arguendo* the military judge erred by permitting Lt Col SG's testimony, we find the error had no substantial influence on the sentence.

*See Barker*, 77 M.J. at 384. After considering the relative strength of the government and defense cases, and especially the quality and materiality of Lt Col SG's brief and narrowly-focused testimony in the broader context of Appellant's offense and the entirety of the presentencing proceedings, we are convinced that any error in admitting Lt Col SG's testimony had no substantial influence on the sentence.

## B. Ineffective Assistance of Counsel

### 1. Additional Background

On appeal, Appellant has provided sworn declarations addressing various aspects of his case, including his contention that his trial defense counsel—Mr. RC and Captain (Capt) MC—provided ineffective assistance of counsel. Appellant asserts, *inter alia*:

> . . . My fourth deployment was to Kandahar, Afghanistan in May 2016, but I was forward deployed to an undisclosed location on a Top Secret/Sensitive Compartmentalized Information – Special Access Program (TS/SCI-SAP) mission for mission partners that I am not at liberty to discuss. My fifth deployment in January 2017 was also to an undisclosed location on a TS/SCI-SAP mission for the 30th Reconnaissance Squadron (RS) and mission partner I am again not at liberty to discuss. Prior to trial, I informed my defense counsel that I could not discuss any details of the missions as they were classified TS/SCI-SAP and my defense counsel informed me that it was "too much trouble" to seek authorization to discuss the classified information.

> . . . [Lt Col SG's] testimony was misleading, and although he was the current commander of the 30 RS, he was not the Commanding Officer (CO) during either of my deployments and was not briefed on operational activities or even the nature of the mission. His testimony regarding my duties was inaccurate and misleading. After my commander testified, I informed my defense counsel that I believed that his testimony was misleading, but I was not able to elaborate because I could not discuss classified information.

At the Government's request, this court ordered affidavits from Mr. RC and Capt MC responsive to Appellant's allegation of ineffective assistance. According to Mr. RC, Appellant's "primary concern" was to be released from pretrial confinement as soon as possible. Mr. RC and Capt MC informed Appellant of the process to obtain classified material pursuant to Mil. R. Evid. 505; however, when they advised Appellant that seeking such information might delay his trial, he specifically told them not to obtain the classified material. Appellant

and his counsel agreed that Appellant would still be able to describe the general nature of his combat experience and PTSD. Appellant provided his counsel a list of witnesses who purportedly could verify that he "saw combat or participated in 'snatch-and-grab' missions," but upon investigation "none of those witnesses corroborated [Appellant's] version of events." Mr. RC again broached the possibility of pursuing classified records, but Appellant was "adamant that he did not want to stay in [pretrial confinement] any longer and that he did not think the classified records would assist his defense." When the Prosecution advised the Defense it intended to call Lt Col SG in rebuttal, Appellant informed his counsel that his first sergeant who deployed with him would be able to confirm his combat exposure. However, when Capt MC interviewed the first sergeant, he did not corroborate Appellant. Mr. RC interviewed Lt Col SG, who provided information consistent with his subsequent testimony to the effect that Appellant did not "see combat" during his classified deployments. Informed of these developments, Appellant again stated he did not want to seek a recess or delay to pursue classified records. Appellant acknowledged his final deployment was to Korea rather than an "undisclosed location." Appellant "was very clear that there was nothing in his file that would help, that he had said everything that he wanted to say, and that there was no reason to obtain his classified records." Appellant declined to testify in surrebuttal to clarify his deployment history, telling his counsel he was "not prepared to call [his] Commander a liar under oath."

Capt MC's declaration was generally consistent with Mr. RC's. Capt MC confirmed that Appellant's priority was to be released from confinement, that he did not want to pursue classified records, that Appellant believed his unsworn statements and unclassified defense exhibits would adequately capture his deployed experiences, and that witnesses identified by Appellant did not corroborate Appellant's version of events. Capt MC added that Appellant's statements regarding the number and classified nature of his various deployments were inconsistent, and that Appellant attributed his PTSD primarily to events during his unclassified second deployment, in Afghanistan. Both Mr. RC and Capt MC denied ever telling Appellant it would be "too much trouble" to pursue classified information.

Appellant provided an additional declaration in rebuttal to trial defense counsel's declarations. Appellant acknowledged he told his counsel he did not believe classified information in his record regarding his deployments would be helpful. However, Appellant avers he told his counsel that if Appellant were allowed to speak about his classified deployments, he could provide "a lot of details" regarding missions that would be helpful to his case. Appellant explains his counsel advised him the classified information was "not worth pursuing" because they believed they had enough information regarding his PTSD, and they told Appellant pursuing the classified information could result

in his continued pretrial confinement for another 12 months and additional legal fees. According to Appellant, his counsel's attitude toward classified information was "dismissive" and "it did not seem like a real option to be able to discuss classified information with my attorneys." Appellant further asserts that any witnesses who might corroborate the details of his deployments "would not do so because they are not allowed to confirm details of the classified information."

**2. Law**

The Sixth Amendment[6] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

**3. Analysis**

---

[6] U.S. CONST. amend. VI.

Appellant contends his trial defense counsel were ineffective because they failed to conduct a reasonable investigation into mitigating evidence, specifically Appellant's deployments. Appellant avers that, at a minimum, it was critical for trial defense counsel to be able to at least talk to Appellant about his deployments. Appellant points to Mr. RC's assertion to the military judge that the Defense was "hamstrung" in its ability to respond to Lt Col SG's testimony, and the limited nature of Mr. RC's cross-examination of Lt Col SG. Appellant posits that if the Defense had pursued access to classified information under Mil. R. Evid. 505, either trial defense counsel would have obtained useful information or, if the Government prevented disclosure, the Defense might have secured remedies under the rule such as, for example, foreclosing Lt Col SG's rebuttal testimony.

As an initial matter, we have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's declarations and those of Mr. RC and Capt MC. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). We find such a hearing is not required in this case. To a considerable extent, the declarations are not inconsistent. Appellant concedes he did tell his counsel he did not think classified records regarding his deployments would be helpful. He does not deny that witnesses contacted by his counsel did not corroborate his version of events. Appellant implies he did prioritize release from confinement over pursuit of access to classified information that would delay proceedings and prolong his confinement. To the extent the declarations are inconsistent, resolving any factual disputes in Appellant's favor would not result in relief. *See id.*

Turning to the three-part test articulated in *Gooch*, 69 M.J. at 362, we find there are reasonable explanations for trial defense counsel's actions. Appellant wanted to be released from confinement. Trial defense counsel negotiated a PTA that would result in Appellant's conviction of only a single, lesser offense and would result in his immediate release from confinement upon conclusion of his trial. Pursuing disclosure of classified information could reasonably be expected to delay Appellant's trial, resulting in continued confinement that was unnecessary in light of the available PTA. Furthermore, pursuing disclosure might render the PTA less appealing to the convening authority, threatening its favorable terms. In light of the available unclassified information regarding Appellant's deployments, PTSD, and other mental health issues, any classified details of his fourth and fifth deployments were of marginal apparent materiality. Furthermore, the inability of witnesses identified by Appellant to corroborate his claims regarding his deployments might reasonably have given trial defense counsel pause as to the extent or value of any classified information. Under these circumstances, we find trial defense counsel's initial decision not to pursue disclosure of classified information to be reasonable.

We further find trial defense counsel's decision not to pursue disclosure of classified information in response to Lt Col SG's rebuttal testimony to be reasonable. As described above, Lt Col SG's testimony was of limited scope and materiality in the broader context of the entire case. Appellant contends he told his counsel that, if permitted to describe classified aspects of his deployment, he could have provided "a lot" of helpful details. However, even without going into classified details, Appellant could have testified in surrebuttal at an unclassified level. Appellant might have followed up on Lt Col SG's acknowledgment on cross-examination that he had not been Appellant's commander during Appellant's fourth and fifth deployments, stating that Lt Col SG lacked personal knowledge and his testimony was inaccurate or misleading, if such was the case. However, Appellant does not deny Mr. RC's assertion that Appellant made an informed decision not to testify in surrebuttal. Nor does Appellant now assert he in fact desired a delay to pursue classified information in response to Lt Col SG's testimony. Furthermore, with respect to Mr. RC's use of the term "hamstrung" when objecting to Lt Col SG's testimony, he explains in his declaration:

> I used the word "hamstrung" because [Appellant] already informed me that he did not want to risk losing the benefit of his PTA by requesting the classified documents, . . . he was not prepared to rebut his Commander's testimony, none of the witnesses corroborated his story, and the defense had no way to rehabilitate [Appellant] despite our best efforts.

In other words, to the extent the Defense's ability to counter Lt Col SG's testimony was impaired, this condition was the result of reasonable choices by trial defense counsel driven by Appellant's own decisions and priorities, rather than any unfairness wrought by the Government or the military judge.

For similar reasons, with regard to the second element of the test, we find Mr. RC and Capt MC did not perform "measurably below" the standard to be expected of trial defense counsel. Appellant's attorneys made reasonable strategic decisions in pursuit of Appellant's primary objectives, and secured his immediate post-trial release by negotiating a favorable PTA. Similarly, their tactical response to Lt Col SG's testimony was not deficient in light of the lack of corroboration for Appellant, the limited materiality of the rebuttal, and Appellant's own decisions and priorities.

Finally, we do not perceive any reasonable probability of a more favorable result had trial defense counsel pursued disclosure of classified information from Appellant's fourth and fifth deployments. Again, the limited scope and materiality of Lt Col SG's testimony did not alter the thrust of the defense sentencing case, which emphasized his PTSD and other disorders tied primarily to his first deployment to Afghanistan, as corroborated by the R.C.M. 706

report and Appellant's counseling and treatment. Moreover, neither Lt Col SG's testimony nor any undisclosed classified information had any direct link to the assault and battery against AR for which the military judge sentenced Appellant. Furthermore, by the time of sentencing, Appellant had already served more time in pretrial confinement than the maximum imposable term of confinement, and we are not persuaded Lt Col SG's testimony or the absence of classified details regarding Appellant's final deployments were substantial factors in the imposition of the bad-conduct discharge, reduction in grade, or reprimand.

## C. Denial of Right to Appellate Counsel

### 1. Additional Background

On 10 December 2018, citing *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002), Appellant submitted to this court a motion to compel post-trial discovery, seeking to have this court order the Government to produce "documents and information" related to Appellant's classified fourth and fifth deployments. Specifically, Appellant sought: (1) the location, unit, and specific duties involved with his fifth deployment in January 2017; (2) any non-disclosure agreements pertaining to both deployments; (3) disclosure of relevant Special Access Programs and the identity and location of classified information release authorities; and (4) information relating to Appellant's duties, tasks, accomplishments, and direct or indirect exposure to combat during these deployments. On 26 December 2018, the Government opposed the motion on various grounds, including that Appellant had failed to demonstrate a reasonable probability that the result of the proceeding below would have been different had the requested information been disclosed. *See id.* On 27 December 2018, this court denied Appellant's motion to compel post-trial discovery because Appellant did not provide an adequate showing that the requested information was relevant to a claim of error.

### 2. Law

"When faced with a post-trial dispute over discovery relevant to an appeal, an appellate court . . . must determine whether the appellant met his threshold burden of demonstrating that some measure of appellate inquiry is warranted." *Campbell*, 57 M.J. at 138. The court should consider, *inter alia*:

> (1) whether the defense has made a colorable showing that the evidence or information exists;

> (2) whether or not the evidence or information sought was previously discoverable with due diligence;

> (3) whether the putative information is relevant to appellant's asserted claim or defense; and

(4) whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.

*Id.*

"An accused has the right to effective representation by counsel through the entire period of review following trial, including representation before the Court of Criminal Appeals . . . ." *Diaz v. The Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F. 2003) (citation omitted). However, "[t]he right to communicate with counsel . . . is not absolute." *United States v. Moussaoui*, 591 F.3d 263, 289 (4th Cir. 2010). "Not all restrictions on communication between a defendant and his counsel are constitutionally prohibited, however. In certain contexts there can be an 'important need to protect a countervailing interest,' which may justify a restriction on the defendant's ability to consult with his attorney . . . ." *United States v. Triumph Capital Group, Inc.*, 487 F.3d 124, 129 (2d Cir. 2007) (quoting *Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir. 2000)).

Structural error exists when an appellate court faces difficulty in assessing the effect of the error or the error is so fundamental that harmlessness is irrelevant. *United States v. Wiechmann*, 67 M.J. 456, 463 (C.A.A.F. 2009) (citing *United States v. Brooks*, 66 M.J. 221, 224 (C.A.A.F. 2008)). "'Structural errors involve errors in the trial mechanism' so serious that 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *Brooks*, 66 M.J. at 224 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)). Structural errors "require no proof of prejudice for reversal." *Id.* "Not all impingements on attorney-client communications constitute" structural error, and there is a strong presumption that errors are not structural. *Id.* at 223–24 (citations omitted).

Constitutional errors not amounting to structural errors are tested for harmlessness beyond a reasonable doubt. *United States v. Condon*, 77 M.J. 244, 246 (C.A.A.F. 2018) (citing *United States v. Jerkins*, 77 M.J. 225, 228 (C.A.A.F. 2018)). An error is harmless beyond a reasonable doubt if it did not contribute to the result of the court-martial. *See id.* (citation omitted).

### 3. Analysis

Appellant contends the Government has interfered with his rights to counsel by denying his post-trial discovery request for information necessary to discuss classified information with his appellate counsel. Appellant avers this information is relevant to his claim of ineffective assistance of counsel, discussed above, because in order to obtain relief he must demonstrate he was prejudiced by trial defense counsel's failure to pursue disclosure of classified information

regarding his final deployments. Appellant argues this denial of effective assistance amounted to structural error in his case due to the difficulty in assessing the resulting prejudice. *See Brooks*, 66 M.J. at 224 (citations omitted). Assuming *arguendo* there was no structural error, Appellant contends there was constitutional error that was not harmless beyond a reasonable doubt.

The initial question is whether Appellant has "met his threshold burden of demonstrating that some measure of appellate inquiry" into the classified information is warranted. *Campbell*, 57 M.J. at 136. Having considered the factors the United States Court of Appeals for the Armed Forces (CAAF) articulated in *Campbell*, among other considerations, we find Appellant has failed to do so. In particular, we do not find a "reasonable probability" the result of any proceeding would be different if the putative information had been disclosed. *Id*.

The nondisclosure of any classified information relating to Appellant's deployments has not affected the outcome of our analysis of Appellant's claim of ineffective assistance of counsel. As detailed above, we find trial defense counsel made reasonable decisions, based on Appellant's desires and the other information available to them, not to pursue classified information either before trial or in response to Lt Col SG's rebuttal testimony. Therefore, Appellant's claim of ineffective assistance of counsel would fail irrespective of any classified details of his deployments that he was prohibited from sharing with his counsel at trial or on appeal. Similarly, as described above, such classified details were of such limited materiality in the overall context of Appellant's trial that we remain unpersuaded that their disclosure at trial or on appeal would have created a reasonable probability of a more favorable result, either at the court-martial or before this court.

Because Appellant has not demonstrated appellate discovery is appropriate under *Campbell*, we find no error, structural or otherwise. Assuming *arguendo* the Government did interfere with Appellant's right to counsel, we would not find structural error in this case. Appellant contends he is unable to explain the extent of the classified mitigating evidence, and therefore this court cannot assess the effect of the error. *See Brooks*, 66 M.J. at 224 (citations omitted). We are not persuaded. For the reasons stated above, we found no reasonable probability disclosure of these details would have affected either the sentence imposed by the military judge or our resolution of Appellant's ineffective assistance of counsel claim. For similar reasons, we also find that any non-structural, constitutional error was harmless beyond a reasonable doubt.

## D. Incomplete Record of Trial

### 1. Additional Background

Before trial, the Defense submitted a motion seeking to introduce evidence of statements AR made shortly after the offense that were covered by Mil. R. Evid. 513, the psychotherapist-patient privilege.[7] The Defense contended AR had waived the privilege by disclosure to a third party, and alternatively that disclosure was constitutionally required pursuant to Appellant's Sixth Amendment right to confront witnesses. The Government opposed the motion. On 7 June 2018, before Appellant entered his pleas, the military judge held a closed hearing in accordance with Mil. R. Evid. 513(e)(2) at which she received evidence and heard argument from counsel. Shortly after the closed hearing, the court-martial recessed until 12 June 2018.

At the beginning of the next day of the trial on 12 June 2018, in a closed session, the military judge announced her ruling on the Defense's Mil. R. Evid. 513 motion. The military judge indicated she had emailed a "Notice of Ruling" to the parties to inform them she was denying the motion. In her oral ruling, she indicated she considered the cases cited by the parties in their pleadings, as well as several United States Supreme Court decisions that she identified. The military judge stated she "found the defense failed to meet its burden as required by [Mil. R. Evid.] 513(e) in order for the court to do in [sic] in camera review, particularly a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under a privileged exception." She stated she found "persuasive" this court's unpublished opinion in *United States v. Morales*, No. ACM 39018, 2017 CCA LEXIS 612 (A.F. Ct. Crim. App. 13 Sep. 2017) (unpub. op.) (holding appellant failed to present specific factual basis demonstrating a reasonable likelihood records would yield constitutionally-required information). The military judge concluded that she found production of the privileged information was "not otherwise required under the Constitution," specifically that the Defense had "failed to show the requested records had exculpatory value or contain substantive evidence directly related to a charged offense or contain evidence capable of impeaching the government's case."

The military judge then stated she intended to "provide [her] Notice of Ruling via PDF version for the court reporter to be put in the place of Appellate Exhibit XI, which is sealed, as previously stated in another session." She then "reserve[d] the right to supplement [her] ruling as necessary prior to authentication of the record." However, Appellate Exhibit XI in the record of trial is

---

[7] The trial transcript, appellate exhibits, and briefs related to the Mil. R. Evid. 513 motion were sealed pursuant to R.C.M. 1103A. These portions of the record and briefs remain sealed, and any discussion of sealed material in this opinion is limited to that which is necessary for our analysis. *See* R.C.M. 1103A(b)(4).

not the military judge's "Notice of Ruling" on the Mil. R. Evid. 513 motion. Instead, it appears to be an unsigned draft ruling on the Defense's unrelated motion to dismiss for violation of Appellant's right to speedy trial under the Sixth Amendment and Article 10, UCMJ.[8] The "Notice of Ruling" on the Mil. R. Evid. 513 motion is not included in the record of trial.

**2. Law**

Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted). "Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1), requires a 'complete' record of the proceedings and testimony to be prepared for any general court-martial resulting in a punitive discharge." *United States v. Lovely*, 73 M.J. 658, 676 (A.F. Ct. Crim. App. 2014). A "complete" record must include any appellate exhibits, as well as exhibits received in evidence. *Id.* (citing R.C.M. 1103(b)(2)(D)(v).

"[T]he threshold question is 'whether the omitted material was substantial,' either qualitatively or quantitatively." *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted). Each case is analyzed individually to decide whether an omission is substantial. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999). "A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (citing *United States v. McCullah*, 11 M.J. 234, 237 (C.M.A. 1981)) (additional citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.* A record may be "substantially complete" even if an exhibit is missing. *See, e.g.*, *Lovely*, 73 M.J. at 676 (missing videos played by defense in sentencing proceedings did not render record incomplete).

**3. Analysis**

Appellant contends the omission of the "Notice of Ruling" on the Mil. R. Evid. 513 motion was substantial because it "adversely affected" Appellant's rights at trial and played a role in his decision to plead guilty, because there is no adequate substitute for the missing exhibit in the record, and because its absence prevents counsel and this court from conducting a "complete review of the record." The Government concedes the "written ruling" is missing from the record, and has not attempted to supplement the record or otherwise prove the

---

[8] The military judge's final, signed ruling on the Defense's speedy trial motion appears in the record as Appellate Exhibit XV.

contents of the missing exhibit. However, the Government contends the omission is not substantial because the military judge's oral ruling contained the "critical elements" of her decision, and because Appellant waived appellate review of the Mil. R. Evid. 513 ruling.

Assuming *arguendo* that the missing exhibit was in fact a written ruling, we find its omission was not substantial for three reasons. First, the military judge's oral ruling conveyed her essential rationale for denying the motion—that the Defense had failed to make the required specific factual showing necessary to warrant *in camera* review. More specifically, she stated the Defense had not demonstrated a reasonable likelihood the requested communications contained information admissible under an exception to Mil. R. Evid. 513, or that, under a constitutionally-required standard, that the communications were exculpatory, contained substantive information directly related to an offense, or had impeachment value. Second, the pleadings and arguments of the parties and the evidence upon which the military judge based her ruling are all available in the record for counsel and this court to review. Third, Appellant waived appellate review of the military judge's Mil. R. Evid. 513 ruling by virtue of his unconditional guilty plea in accordance with the PTA. *See United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (citation omitted).

Finally, further assuming *arguendo* that the omission was either qualitatively or quantitatively "substantial," for similar reasons we find any presumption of prejudice to be rebutted in this case. *See Henry*, 53 M.J. at 111. In short, the record contains an adequate basis to review the military judge's ruling, a ruling that in any event Appellant is not entitled to challenge on appeal.

## E. Sentence Appropriateness

### 1. Additional Background

Appellant was held in military pretrial confinement for 197 days. Before trial, the Defense filed a motion seeking three-for-one credit against any sentence to confinement for each day Appellant spent in pretrial confinement, alleging unduly harsh conditions in violation of Article 13, UCMJ, 10 U.S.C. § 813. The Government opposed the motion. However, after Appellant pleaded guilty, trial defense counsel informed the military judge that pursuant to the PTA the Defense was waiving its Article 13, UCMJ, motion. Appellant acknowledged to the military judge that he understood he was waiving any relief for the alleged violations of Article 13, UCMJ.

On appeal, Appellant's declaration to this court restates numerous complaints regarding the conditions of his pretrial confinement. Appellant asserts, *inter alia*, when he initially entered pretrial confinement he was denied his prescribed medication for PTSD, which resulted in his temporary hospitalization. Appellant asserts these medications were never fully restored and he was

required to take different medications, which worsened his PTSD symptoms such as nightmares, paranoia, suicidal ideation, and extreme hypertension. In addition, Appellant asserts that for some period of his confinement he was on suicide watch and required to wear only a Velcro vest and to sleep on the floor. He avers that female confinement staff observed his bare buttocks and genitals through a video monitor and in person. Appellant states the heating and air conditioning in the facility was inadequate, resulting in temperatures as low as 55 degrees and as high as 85 degrees Fahrenheit. Moreover, Appellant states he was held in isolation and afforded inadequate recreation time, and in particular denied access to strength training equipment he needed due to knee and shoulder injuries. Appellant asserts these conditions led him to file approximately 20 grievances and to file a complaint with the command inspector general (IG). Moreover, Appellant asserts he suffered reprisals from the confinement staff for filing grievances and for announcing his intention to seek assistance from the IG.

### 2. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). We have broad discretion to determine whether a sentence "'should be approved,' even if the sentence is 'correct' as a matter of law." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (quoting *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010)) (additional citation omitted). However, our discretion is not "unfettered," and we have no authority to grant clemency or mercy. *Nerad*, 69 M.J. at 146 (C.A.A.F. 2010).

The CAAF has recognized no constitutional, statutory, or regulatory right for an accused to receive credit against his sentence for lawful pretrial confinement where no confinement is adjudged. *See United States v. Smith*, 56 M.J. 290, 292–93 (C.A.A.F. 2002). Credit for lawful pretrial confinement "can only be applied against confinement." *United States v. Oliver*, 56 M.J. 779, 783 (A.F. Ct. Crim. App. 2002) (citing *Smith*, 56 M.J. at 290); *cf. United States v. Allen*, 17 M.J. 126, 128 (C.M.A. 1984) (holding pretrial confinement entitled Appellant to day-for-day credit against sentence to confinement).

### 3. Analysis

Appellant acknowledges that by his unconditional guilty plea and in accordance with the PTA he affirmatively waived his opportunity to seek relief for illegal pretrial punishment in violation of Article 13, UCMJ. *See Hardy*, 77 M.J. at 442. He further acknowledges he is not entitled to receive credit against his adjudged sentence for time spent in pretrial confinement beyond his adjudged term of confinement. *See Oliver*, 56 M.J. at 783. However, he asserts his unduly harsh pretrial confinement conditions, combined with the extenuating circumstances of his PTSD and other disorders and his formerly outstanding service, render his adjudged sentence inappropriately severe. Therefore, he asks this court to exercise its authority pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), to disapprove the bad-conduct discharge.

In response, the Government contends Appellant's claims regarding his confinement conditions are "unsupported exaggerations." The Government refers to material it provided in opposition to Appellant's original Article 13, UCMJ, motion to provide "context" to his pretrial confinement claims. For example, the Government cites records indicating that Appellant's medication needs were assessed shortly after he entered confinement and he continued to receive medication there; that precautions regarding Appellant's expressed suicidal ideation were warranted; that procedures were in place to avoid unclothed inmates being exposed to confinement staff of the opposite sex; and that Appellant was provided some opportunity for recreation. The Government concedes that prior to 2017, Appellant's record of service was "notable" and his duty performance was "excellent;" however, since 2017 Appellant received two letters of reprimand as well as nonjudicial punishment. The Government also concedes Appellant's PTSD is a "noteworthy" mitigating circumstance. Nevertheless, the Government contends Appellant is entitled to no additional credit for the duration or conditions of his pretrial confinement, and that his sentence is appropriate.

Both parties compare Appellant's case to *United States v. Cooks*, No. ACM 38426, 2014 CCA LEXIS 931 (A.F. Ct. Crim. App. 13 Jan. 2014) (unpub. op.). In *Cooks*, "the appellant received a total of 159 days of pretrial confinement credit when his adjudged and approved sentence [to confinement] was only 90 days." *Id*. at *20–21.[9] Citing *Smith* and *Oliver*, this court found the appellant was not entitled to credit for lawful pretrial confinement beyond his adjudged term of confinement. *Id*. at *21–22. The court concluded, "No credit against other punishments for lawful pretrial confinement is necessary or appropriate

---

[9] This term included 13 days of illegal pretrial confinement credit awarded by the military judge for commingling the appellant with a post-trial inmate, which the convening authority correctly applied against the adjudged term of confinement at action. *Cooks*, unpub. op. at *20–22.

in this situation, and we see nothing about the appellant's situation that renders his adjudged and approved sentence inappropriate." *Id*. at \*22. Appellant implicitly suggests his situation is distinguished from *Cooks* by his conditions of confinement, mental health problems, and service record, and warrants a different result.

We do not find Appellant's sentence to a bad-conduct discharge is inappropriately severe. Appellant committed a significant offense against AR, who described for the court both the acute and lasting distress Appellant's actions inflicted on her. The military judge was well-informed of Appellant's mental health problems and formerly outstanding service record when she decided Appellant's sentence. We are not persuaded Appellant's assertedly harsh pretrial confinement conditions, relief for which he specifically waived, render his bad-conduct discharge or any other aspect of his adjudged sentence inappropriate.

**F. Speedy Trial**

**1. Additional Background**

Appellant entered pretrial confinement on 27 November 2017.[10] On 5 December 2017, a neutral officer conducted a hearing and determined pursuant to R.C.M. 305(i)(2) that Appellant's pretrial confinement should continue. Between 5 December 2017 and 8 January 2018, judge advocates at the Nellis AFB legal office repeatedly communicated with the Clark County District Attorney's Office, providing information regarding Air Force investigations of Appellant and requesting jurisdiction over Appellant's 25 November 2017 assault against AR. On 8 January 2018, the District Attorney's Office released jurisdiction of the matter to the Air Force in writing.

On 9 January 2018, trial counsel notified Appellant's counsel of the jurisdiction release and requested the Defense's availability for a preliminary hearing pursuant to Article 32, UCMJ, 10 U.S.C. § 832. The Defense responded that its preferred date for the hearing was 21 February 2018 based on the schedule of Appellant's civilian counsel, Mr. RC.

On 5 February 2018, Appellant's squadron commander preferred five charges against him, one specification each of aggravated assault and communicating a threat to AR, and one specification each of abusive sexual contact, indecent exposure, and wrongful possession of a controlled substance based on investigation of an incident in March 2017 that was unrelated to AR.

---

[10] The following factual summary is drawn from the military judge's findings of fact in her ruling on the Defense's speedy trial motion, which Appellant has not substantially challenged and which we find not to be clearly erroneous. *See United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted).

The preliminary hearing took place on 21 February 2018, the Defense's preferred date. The preliminary hearing officer (PHO) submitted his report on 27 February 2018. He concluded probable cause existed with respect to each charge and specification except communicating a threat, and recommended trial by general court-martial. On 6 March 2018, the special court-martial convening authority forwarded the charges to the general court-martial convening authority with a recommendation to refer all the charges and specifications to trial by general court-martial. The same day, 6 March 2018, trial counsel notified the Defense that the general court-martial convening authority would be unavailable to refer charges until 15 March 2018, and requested trial defense counsel's availability for arraignment, motions, and trial. Trial defense counsel indicated their first availability for motions was 6 June 2018 and for trial was 11 June 2018.

On 14 March 2018, the general court-martial convening authority referred all five charges and specifications to trial by general court-martial. Appellant was arraigned on 21 March 2018, 115 days after he entered pretrial confinement. On 28 March 2018, the Defense requested an inquiry into Appellant's mental capacity and mental responsibility pursuant to R.C.M. 706. The military judge granted the unopposed motion on 30 March 2018. The inquiry concluded on 2 May 2018.

On 23 May 2018, the Defense submitted a motion to dismiss the charges and specifications for denial of Appellant's right to speedy trial under the Sixth Amendment and Article 10, UCMJ. The Government submitted its opposition on 1 June 2018. On 5 June 2018, the convening authority directed trial counsel to withdraw and dismiss with prejudice the charges and specifications alleging abusive sexual contact, indecent exposure, and possession of a controlled substance. The military judge held a motions hearing on 7 June 2018.

On 12 June 2018, the military judge entered her oral and written rulings on the Defense's speedy trial motion. In light of Appellant's agreement to plead guilty unconditionally pursuant to a PTA, which would waive the Sixth Amendment speedy trial claim, the military judge analyzed the motion only under Article 10, UCMJ. After reciting her findings of fact and summarizing the applicable law, she assessed the delay in bringing Appellant to trial in light of the four factors articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1072). *See United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005). She found, *inter alia*, that the Government acted with "reasonable diligence," that there was no evidence Appellant was subjected to unduly harsh or oppressive conditions of confinement, and that Appellant's "meaningful participation" in preparing his defense had not been impaired. Considering all the circumstances, the military judge found no violation of Appellant's Article 10, UCMJ, right to speedy trial.

After the military judge entered her ruling, in accordance with the PTA, Appellant pleaded guilty to assault consummated by a battery and was sentenced, as described above.

### 2. Law

Whether an appellant was denied his right to speedy trial under Article 10, UCMJ, is a question of law we review de novo. *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016) (quoting *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007)) (additional citation omitted). However, "a military judge's findings of fact . . . will be reversed only if they are clearly erroneous." *Mizgala*, 61 M.J. at 127 (citations omitted). A litigated speedy trial motion under Article 10, UCMJ, is not waived by a subsequent unconditional guilty plea. *Id.*

Article 10, UCMJ, provides in pertinent part: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." 10 U.S.C. § 810. "[A]lthough Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation, the factors from *Barker v. Wingo* are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *Mizgala*, 61 M.J. at 127 (citations omitted). Accordingly, "our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129 (citing *Barker*, 407 U.S. at 530) (additional citation omitted). However, these factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant." *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Barker*, 407 U.S. at 533).

"The standard of diligence under which we review claims of a denial of speedy trial under Article 10 'is not constant motion, but reasonable diligence in bringing the charges to trial.'" *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)) (additional citations omitted). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Id.* (quoting *Tibbs*, 35 C.M.R. at 325). We evaluate "the proceeding as a whole and not mere speed." *Id.* at 129 (quoting *United States v. Mason*, 45 C.M.R. 163, 167 (C.M.A. 1972)).

### 3. Analysis

On appeal, Appellant personally asserts a violation of his right to speedy trial under Article 10, UCMJ. He notes he was in pretrial confinement for 197 days total, and held for 71 days before charges were preferred. Appellant explains that throughout this time he suffered from fear and anxiety regarding

his case, and from harsh conditions of confinement that exacerbated his PTSD symptoms. Appellant alleges that trial counsel "did not attempt to contact A.R., the complaining witness, until 12 February 2018, after [he] spent 78 days in pretrial confinement," which demonstrates "there was no attempt to move forward with [his] case."

We do not find Appellant's right to speedy trial under Article 10, UCMJ, was violated. We recognize the *Barker* factors "are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *Mizgala*, 61 M.J. at 127. We also recognize that 197 days is a significant period for an accused to await trial in confinement, and sufficient under the circumstances of this case to warrant further inquiry into the reasonableness of the delay. We further acknowledge the Defense requested speedy trial on five occasions between 6 December 2017 and 18 March 2018, although two of those demands were made during periods of Defense-requested delay, diminishing their force. Additionally, we recognize Appellant's pretrial confinement substantially exceeded the term of confinement he was eventually adjudged.

Nevertheless, the *Barker* factors are not "talismanic," individually or collectively, and must be considered together with all relevant circumstances in the case. *Wilson*, 72 M.J. at 351 (quoting *Barker*, 407 U.S. at 533). The ultimate question is whether, considering the "proceeding as a whole," the Government exercised "reasonable diligence" in bringing Appellant to trial. *See Mizgala*, 61 M.J. at 127–29. We conclude the Government did so in light of the reasons for the delay, which we find to be of primary significance in this case.

The delay from 27 November 2017, when Appellant entered pretrial confinement, until 8 January 2018 was primarily due to actively pursuing release of jurisdiction of the 25 November 2017 incident by the Clark County District Attorney's Office. We find this was a more than reasonable consideration where the offense occurred off-base and was responded to and investigated by civilian authorities. *See* Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 2.6.1 (6 Jun. 2013, as amended by AFGM 2016-01, 3 Aug. 2016) ("When a member is subject to both UCMJ and state or foreign jurisdiction for substantially the same act or omission, the determination of which sovereign shall exercise jurisdiction should be made through consultation or prior agreement between appropriate Air Force and civilian authorities. RCM 201(d).").

Upon receiving the release of jurisdiction, trial counsel promptly coordinated with the Defense to schedule the preliminary hearing. This hearing was scheduled for 21 February 2018, the Defense's "preferred date." The delay between 9 January 2018 and 21 February 2018 was thus primarily attributable to the Defense.

There was some relatively short delay between the submission of the PHO's report on 27 February 2018 and referral of the charges and specifications to trial on 14 March 2018. This delay was largely attributable to the assessment of the PHO's recommendations, to coordination between the special and general court-martial convening authorities, and to the general court-martial convening authority's temporary unavailability. We find these were modest and reasonable delays in an otherwise active prosecution. *See Mizgala*, 61 M.J. at 127 (citation omitted).

On 6 March 2018, before referral, trial counsel coordinated dates for arraignment, motions, and trial with the Defense. Once again, proceedings were scheduled on or about the dates requested by the Defense. The intervening R.C.M. 706 inquiry—also requested by the Defense—occurred during this period of Defense-requested delay and did not postpone Appellant's trial. In short, under the circumstances of this case, we find the reasons for delay weigh heavily and convincingly in favor of the Government.

Finally, we agree with the military judge that the record discloses no material prejudice to Appellant's ability to participate in the preparation of his defense, the "most serious" form of prejudice that pretrial confinement can potentially incur. *Id.* at 129 (quoting *Barker*, 407 U.S. at 532).

Viewing this case as a whole, we find the Government exercised reasonable diligence in bringing Appellant to trial, and did not violate Article 10, UCMJ.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[11]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[11] We note the recitation of Appellant's plea to Charge IV in the Court-Martial Order (CMO) erroneously includes the word "batter" in place of "battery." We direct the promulgation of a corrected CMO.